OPINION OF THE COURT
Terry Jane Ruderman, J.
Claimant alleges that, on June 21, 1990, his karate instructor at the State University of New York at Purchase (SUNY), Nazim Ali, assaulted claimant and caused him to sustain *532 personal injuries. Claimant seeks damages on the theory that Ali was an employee of SUNY and that SUNY is vicariously liable for Ali’s acts. The trial of the claim was bifurcated and this decision pertains solely to the issue of liability.
In June of 1990, claimant, a full-time student at SUNY, enrolled in statistics and karate for the summer session held from June 11th until July 26th. Ali taught karate as a noncredit course. Classes were held in the gym located in the physical education building.
Claimant testified that, on June 21, 1990, Ali directed the class to do a "reverse push-up.”[2] Claimant refused to do the reverse push-up because he thought it was an unsafe activity. An argument between claimant and Ali ensued. Claimant then left the room to drop the course and file a written complaint against Ali. According to claimant, he returned to the class a short time later to give a note to a friend and at that point Ali started to yell at claimant. Following a verbal altercation, Ali struck claimant on the face, wrist and neck. Claimant testified that he never hit Ali. Claimant was taken by ambulance to the hospital.
Thereafter, a jury found Ali guilty of assault in the third degree, a class A misdemeanor (Penal Law § 120.00). SUNY terminated Ali’s services after the June 21, 1990 incident and paid him a prorated fee. SUNY refunded tuition to the students enrolled in Ali’s class.
Defendant does not dispute that the assault occurred. Rather the defendant argues that it is not liable for Ali’s actions because Ali was an independent contractor or, alternatively, if Ali is found to be an employee of SUNY, his actions were beyond the scope of his employment.
Defendant called Laura J. Evans, Dean of Continuing Education at SUNY for 161/2 years, to testify as to Ali’s status. Evans testified that Ali was hired as an independent contractor in the spring of 1990 and that, pursuant to the terms of that contract, Ali taught karate in the fall, spring and summer sessions of 1990. The contract was admitted into evidence. The contract, entitled "Non-Credit Continuing Education Instructional Services Agreement Form,” was signed by Ali and signed on behalf of the college by Evans. The contract provided in pertinent part:
"You shall obtain the approval of State University for the general scope and nature of the services performed hereunder. *533 However, you shall remain solely responsible for establishment and development of actual course content, manner of presentation, and all similar elements of the services provided * ^ *
"The relationship of the parties arising out of this agreement shall be that of independent contractor. You shall not, as the result of this agreement, be considered an employee of the State University or the State of New York, nor shall you represent that such employee relationship exists, arising out of this contract * * *
"State University shall not be required to provide you with staff, materials, supplies, office space or secretarial support.”
To receive payment under the contract, Ali had to submit a bill for services and a voucher at the conclusion of the course. Ali was paid $450 for his services. Ali was not paid out of the money from SUNY’s personnel payroll account used for employees. Rather, Ali was paid from SUNY’s expense account. SUNY did not provide Ali with any office space, secretarial assistance, health or retirement benefits, nor any other benefits which SUNY provided to its employees.
Defendant offered into evidence SUNY’s summer session catalogue of courses. The catalogue gave a description of the courses offered and was available to matriculated students and the general public. The courses were divided into two categories, "Non-Credit Courses” and "Undergraduate Credit Courses”. The courses listed under "Non-Credit Courses” "General Interest” made reference to the teacher as "Instructor,” whereas, the courses listed under the "Undergraduate Credit Courses” referred to the teacher as "Instructor, Faculty of Summer Session, SUNY.” However, there was no express statement in the catalogue indicating any distinction between "Instructor” or "Instructor, Faculty of Summer Session, SUNY.” There was also no indication as to whether the teacher was hired as a full-time faculty member / employee or whether the teacher was hired as an independent contractor to teach a single course.
As noted above, claimant argues that defendant should be held vicariously liable for Ali’s acts on the theory that Ali is an employee of SUNY. Defendant argues that it cannot be held vicariously liable because Ali is an independent contractor or, alternatively, even if Ali were an employee of SUNY, his acts were beyond the scope of his employment. The doctrine of vicarious liability imputes liability to a defendant for another person’s fault. One theory upon which the doctrine is *534 based is that the defendant had opportunity for control of the wrongdoer. The Court of Appeals stated in Feliberty v Damon (72 NY2d 112, 118): "It was early postulated that a master had the ability, and the obligation, to control its servant, and would be liable for torts committed by the servant in the course of employment (see generally, Harper and Kime, The Duty to Control the Conduct of Another, 43 Yale LJ 886 [1933-1934]). The common-law distinction between 'servants’ and 'independent contractors,’ whose wrongdoing generally gave rise to no liability on the part of those who hired them, is comparatively recent (Prosser and Keeton, Torts § 71, at 509 [5th ed]). The reason most commonly advanced for the distinction is that an employer cannot control the manner m which work is performed by an independent contractor as it can the work of a servant; in these circumstances, the contractor itself is properly chargeable with preventing, bearing and distributing the attendant risks. (See, Restatement [Second] of Torts § 409, comment a.)”
In the instant case, the testimony of SUNY’s dean, the express contract terms, the method of payment, and other indicia, indicate that Ali was hired as an independent contractor to perform a specific task according to his own methods and without being subject to control by SUNY except as to the result of the work (see, Matter of Ted Is Back Corp., 64 NY2d 725; see generally, 3 NY Jur 2d, Agency and Independent Contractors, § 322). However, it is arguable that, based upon the manifestations of SUNY in its summer session catalogue, claimant may have reasonably believed that Ali was an employee (see generally, 2 NY Jur 2d, Agency and Independent Contractors, §§ 84-85). In any event, this court need not resolve the issue of whether Ali was an independent contractor or an employee of SUNY because, even assuming that Ali was an employee, his conduct was beyond the scope of employment and, therefore, defendant cannot be held vicariously liable. This analysis was invoked by the Appellate Division in Curtis v City of Utica (209 AD2d 1024, 1025), where it was held that: "Assuming, arguendo, that defendant was the employer of the summer camp group leader who assaulted the infant, it may not be held liable for his intentional tort because the record establishes as a matter of law that the acts constituting that tort were wholly personal in nature, outside the scope of the counselor’s employment and not in furtherance of defendant’s business.”
The Court of Appeals recently addressed the issue of an employer’s liability for the tortious conduct of its employee in *535 Lazo v Mak’s Trading Co. (84 NY2d 896). Judge Titone stated in his concurring opinion (at 899) that: "Although an employer is often held liable for the torts of employees (see, Cornell v State of New York, 46 NY2d 1032), an employer cannot be held liable for an employee’s assaultive acts where the tortious conduct was not undertaken within the scope of employment, the employer did not authorize the violence and the use of force is not within the discretionary authority afforded the employee (e.g., Sauter v New York Tribune, 305 NY 442; Bracco v Arro Sportswear Co., 3 NY2d 726; Gibilaro v Lomax Trading Corp., 22 AD2d 703, affd 16 NY2d 898; Oneta v Toed Co., 271 App Div 681, affd 297 NY 629; see, Sims v Bergamo, 3 NY2d 531; see generally, Restatement [Second] of Agency §§ 235, 245; Prosser and Keeton, Torts § 70, at 505-507 [5th ed]). In fact, it is elementary that 'if a servant goes outside of his employment, and without regard to his service, acting maliciously, or in order to effect some purpose of his own, wantonly commits a trespass, or causes damage to another, the master is not responsible’ (Mott v Consumers’ Ice Co., 73 NY 543, 547).”
Numerous cases have held that the employee’s intentional torts were beyond the scope of employment and that therefore the employer could not be held vicariously liable for the employee’s conduct. For example, in Mary KK. v Jack LL. (203 AD2d 840), the parent of a student commenced an action against the school district for the sexual misconduct of a teacher within the district. It was undisputed that the teacher had molested the plaintiff’s daughter on several occasions. The Appellate Division held that: "Although these acts occurred on school property during school hours, they were clearly outside the scope of the teacher’s employment as they were wholly personal in nature and certainly not done in the furtherance of the District’s business (see, Nicollette T. v Hospital for Joint Diseases/ Orthopedic Inst., 198 AD2d 54; Hall v Danforth, 172 AD2d 906). Therefore, we conclude that, as a matter of law, the doctrine of respondeat superior is inapplicable to this case” (203 AD2d, at 841).
Similarly, in Joshua S. v Casey (206 AD2d 839), the Appellate Division held that the school, the church and the diocese could not be held vicariously liable for the alleged sexual assault committed by a priest because such conduct was not within the scope of employment and cannot be said to have been in furtherance of the employer’s business (see also, Garcia v City of New York, 104 AD2d 438, affd 65 NY2d 805 [off-duty police officer’s act of shooting plaintiff was deliberate and not *536 within the scope of employment; therefore the City could not be held vicariously liable]; Cornell v State of New York, 46 NY2d 1032, supra [State not vicariously liable for rape by hospital employee]; Gibilaro v Lomax Trading Corp., 16 NY2d 898, supra [defendant corporation not vicariously liable for employee’s tortious conduct]).
In the instant case, while Ali’s acts occurred on school property and during school hours, they were clearly not in furtherance of SUNY’s business (see, Mary KK. v Jack LL., supra). SUNY did not authorize the violence and the use of force was not within any discretionary authority afforded Ali (see, Lazo v Mak’s Trading Co., supra). The assault was not undertaken within the scope of employment (see, Gibilaro v Lomax Trading Corp., supra; Moritz v Pines Hotel, 52 AD2d 1020). Rather, the tortious conduct was wholly personal in nature, without regard to his service (see, Curtis v City of Utica, supra). In summary, Ali’s acts were not within the scope of his employment; therefore, defendant cannot be held vicariously liable.
Accordingly, defendant’s trial motion to dismiss the claim upon which decision was reserved is now granted and the Chief Clerk of the court is directed to enter judgment dismissing claim No. 82582.

. All quotations are to the trial notes unless otherwise indicated.