**Barbara HAYBECK, Plaintiff,**

v.

**PRODIGY SERVICES COMPANY, a Partnership of Joint Venture with IBM Corporation and Sears Roebuck and Co., and Jacob Jacks, Defendants.**

**95 Civ. 9612(SS).**

United States District Court,
S.D. New York.

Nov. 12, 1996.

---

Parker & Waichman, Jerrold S. Parker, Great Neck, NY, for Plaintiff.

Phillips Nizer Benjamin Krim & Ballon, L.L.P., New York City (Perry S. Galler, Thomas G. Jackson, Liza M. Cohn, Michael Fischman, of Counsel), for Defendants Prodigy Services Company, International Business Machines Corporation and Sears Roebuck and Co., Inc.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

In this diversity action, plaintiff alleges that she contracted the HIV virus from Jacob Jacks (hereinafter "Jacks"),[1] an employee of defendant Prodigy Services Company (hereinafter "Prodigy"), whom plaintiff first met in an on-line Prodigy sex chat room. Plaintiff contends that under theories of respondeat superior or negligent hiring and retention, Prodigy is responsible for Jacks' transmission of the HIV virus to her because Prodigy knew that Jacks had the AIDS virus and knew that Jacks was having sex with customers he met on-line. Prodigy moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint on the ground of failure to state a claim upon which relief can be granted. For the reasons to be discussed, defendant's motion to dismiss is granted.

---

1. Jacob Jacks is believed to be deceased at this time. Although named in the complaint, neither Jacks nor his estate have been served in this action. (Defs' Mem. at 3).

## BACKGROUND

Plaintiff's complaint alleges that Prodigy injured plaintiff by its negligent conduct in allowing their employee, Jacob Jacks, to have sexual intercourse with customers with the knowledge that Jacks had AIDS. Although the complaint asserts that Prodigy's conduct injured plaintiff, it does not explain how.[2] Plaintiff's Affidavit and Memorandum of Law in Opposition to the instant motion, however, explain that after Jacks denied being HIV positive, plaintiff had sexual intercourse with him and contracted the AIDS virus. (Haybeck Aff.; Pl.Mem. at 4—5).

The facts, assumed to be true for purposes of this motion, are that:

At some time prior to November 11, 1994 the plaintiff Barbara Haybeck became a customer of the defendant Prodigy. Prodigy sold time on their computer service and Barbara bought same. Jacob Jacks was an employee of Prodigy. Mr. Jacks was a sexual predator who had full blown AIDS, a fact known and admitted by Prodigy. . . .

By using his position as an employee of Prodigy, Jacks was able to spend countless hours on-line with plaintiff while he was at work at Prodigy's offices. In addition, Jacks gave plaintiff months of "free time" on the Prodigy network, as well as unlimited use of his own Prodigy account. The motive for this conduct was solely to entice Barbara Haybeck, by any means necessary, into an illicit and aberrant relationship that resulted in her having a consensual sexual relationship with Jacks. Both before and during this relationship, Jacks repeatedly denied having AIDS. Thereafter, and as a direct result of this sexual relationship, Barbara Haybeck contracted AIDS—from which she will die.

(Pl.'s Mem. at 4—5.)

Plaintiff contends that Prodigy "should have taken special precautions to prevent" Jacks' conduct. (Compl. ¶ 150) Plaintiff also insists that her injuries were "due solely to the negligence, carelessness, recklessness and gross negligence of the defendants in their ownership, operation, management, repair and control of their agents, servants, employees and their on-line network and through no fault of lack of care on the part of the plaintiff." (Compl. ¶ 151.)

Defendant argues, however, that Prodigy is not responsible for plaintiff's contraction of the AIDS virus from Jacob Jacks because Jacks' sexual intercourse with plaintiff fell outside the scope of his employment. Further, it maintains that Prodigy owed no duty to plaintiff to "[i]nvolve itself in her personal or sexual conduct," (Def.Mem. at 17), because Prodigy was forbidden by law and public policy either to inquire into Jacks' HIV status or to control his relations with persons outside the work environment. (Def.Mem. at 18—21.) Defendant also contends that plaintiff's consent to the sexual union was an "unforeseeable superseding act" which "absolve[s]" Prodigy of "any possible liability." (Def.Mem. at 22). Finally, defendant urges that plaintiff cannot satisfy the jurisdictional threshold of $50,000 required for diversity jurisdiction because she accepted a contractual limitation of liability with Prodigy that limits her recovery to an amount below the threshold. (Def.Mem. at 24—25.)

## DISCUSSION

A district court's function on a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is to assess the legal feasibility of the complaint. *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991). The issue "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Allegations contained in the complaint must be construed favorably to the plaintiff. *Walker v. New York,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). Dis-

---

2. The Complaint merely asserts: "[t]hat by reason of the foregoing, plaintiff Barbara Haybeck sustained severe and permanent personal injuries, became sick, sore, lame and disabled, suffered mental anguish, was confined to hospital, bed and home and may, in the future, be so confined; was incapacitated and [sic] from attending to her usual duties and may in the future, be so incapacitated, plaintiff was and is substantially psychologically damaged, and plaintiff was otherwise damaged." (Compl. ¶ 152.)

missal is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted)).

In considering a Rule 12(b)(6) motion, a court must look to: (1) the facts stated on the face of the complaint; (2) documents appended to the complaint; (3) documents incorporated in the complaint by reference; and (4) matters of which judicial notice may be taken. *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir.1993) (citing *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991)). *See also Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993) (same). In this case, I take judicial notice of the facts alleged in plaintiff's affidavit submitted in opposition to the instant motion because the facts explain the predicate for plaintiff's cause of action.

### I. *Scope of Employment*

■ The central issue in this case is whether Jacob Jacks' failure to disclose his HIV status before having sexual intercourse with the plaintiff was conduct which can be deemed to fall, as a matter of law, within the scope of his employment with Prodigy. I understand that "because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury." *Riviello v. Waldron*, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (Ct.App.1979). However, where a court takes as true all the facts alleged by plaintiff and concludes that the conduct complained of cannot be considered as a matter of law within the scope of employment, then the court must dismiss the complaint for failure to state a claim. *See, e.g., Rappaport v. International Playtex Corp.*, 43 A.D.2d 393, 352 N.Y.S.2d 241 (3d Dep't.1974) (reversing lower court for failing to dismiss where conduct fell outside of the scope of employment as a matter of law); *cf. Petrousky v. United States*, 728 F.Supp. 890 (N.D.N.Y.1990) (holding as a matter of law

that plaintiff's supervisor was acting within the scope of his employment when he libeled plaintiff in disciplinary memoranda).

■ In considering whether a particular act falls within an employee's scope of employment, New York courts look to five factors:

[1] the connection between the time, place and occasion for the act, [2] the history of the relationship between employer and employee as spelled out in actual practice, [3] whether the act is one commonly done by such an employee, [4] the extent of departure from normal methods of performance; [5] and whether the specific act was one that the employer could reasonably have anticipated.

*Riviello v. Waldron*, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (Ct.App.1979). Here, defining carefully the precise act which is the subject of the complaint is crucial. To that end, it must be noted that plaintiff does not complain of Jacks' sexual relationship with her, but rather she complains of his failure to tell her that he was HIV positive and to engage in protected sex. In fact, plaintiff admits that she fully consented to the sexual union. Plaintiff insists, however, that had she known Jacks was HIV positive, she would never have consented to having sex with him. Hence, the core of plaintiff's complaint is that Jacks' failure to give her this information caused her injury, and it, therefore, is the proper focus of the scope of employment inquiry.

■ Can it be said, then, that Jacks was acting within the scope of his employment with Prodigy when—outside the place of employment—he decided to conceal his HIV status from, and have unprotected sex with, a sexual partner? I conclude the answer is no. Courts have repeatedly held that acts taken and decisions made on an employee's personal time outside of work cannot be imputed to an employer. "New York courts have stated that 'where an employee's conduct is brought on by a matter wholly personal in nature, the nature of which is not job-related, his actions cannot be said to fall within the scope of his employment.'" *Longin v. Kelly*, 875 F.Supp. 196, 201—203 (S.D.N.Y.1995) (quoting *Stavitz v. City of New York*, 98 A.D.2d 529, 531,

471 N.Y.S.2d 272, 274 (1st Dep't 1984)); *see also Joseph v. City of Buffalo,* 83 N.Y.2d 141, 146, 608 N.Y.S.2d 396, 629 N.E.2d 1354 (Ct. App.1994) (police officer not acting within the scope of his employment when he left a service revolver where a child found it, even where a municipal law required the officer to have the gun nearby for emergencies); *Kelly v. City of New York,* 692 F.Supp. 303, 308 (S.D.N.Y.1988) (city not liable for assault by city corrections officer where "[i]t is undisputed that the incident ... arose from a prior personal dispute"); *Forester v. State,* 645 N.Y.S.2d 971 (Ct.Claims 1996) (state not responsible where SUNY instructor assaulted student, even where the "acts occurred on school property and during school hours").

In cases specifically involving sexual misconduct by employees, New York courts have carefully avoided extending liability to employers. *See, e.g., Joshua S. v. Casey,* 206 A.D.2d 839, 615 N.Y.S.2d 200 (4th Dep't 1994) (holding that a priest's sexual abuse of a child was, as a matter of law, not within the scope of employment); *Kirkman v. Astoria General Hospital,* 204 A.D.2d 401, 611 N.Y.S.2d 615 (2d Dep't 1994) (hospital security guard who raped a minor child was not acting within the scope of his employment); *Koren v. Weihs,* 190 A.D.2d 560, 593 N.Y.S.2d 222 (1st Dep't 1993) (psychotherapist who had sex with patient under the guise of treatment was not acting within the scope of his employment); *Noto v. St. Vincent's Hospital,* 160 A.D.2d 656, 559 N.Y.S.2d 510 (1st Dep't) (plaintiff "failed to allege facts on which the existence of a viable claim ... could be predicated" where she complained that her psychiatrist "engaged in sexual relations with her after she had been discharged, and after he had ceased treating plaintiff as his patient"), *appeal denied,* 76 N.Y.2d 714, 564 N.Y.S.2d 718, 565 N.E.2d 1269 (Ct.App. 1990); *Heindel v. Bowery Savings Bank,* 138 A.D.2d 787, 525 N.Y.S.2d 428 (3d Dep't 1988) (mall security guard's rape of fifteen year old girl "was in no way incidental to the furtherance of [the employer's] interest" and was "committed for personal motives" and was "a complete departure from the normal duties of security guard."); *Cornell v. State,* 60 A.D.2d 714, 401 N.Y.S.2d 107 (3d Dep't 1977) ("homosexual attack" committed by attendant at mental institution upon a patient was "obviously neither within the scope of the attendant's employment nor done in furtherance of his duties to his employer").

In *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995), the Court of Appeals held that "an employer is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business." In that case, plaintiff had been to a business dinner with several supervisors and co-employees when the group became highly intoxicated and a supervisor later sexually assaulted her. The Court viewed the assault as "a complete departure from the normal duties of a Seiler employee." *Tomka,* at 1318. In the instant case, the imposition of respondeat superior liability would be even more troubling because even if the sexual activity at issue furthered Prodigy's business by increasing a customer's use of its services, as alleged by plaintiff, the true conduct of which she complained is Jacks' failure to reveal a private medical condition while engaging in an off-duty, intimately personal act.

The purely personal decision by Jacks whether to disclose a medical fact about himself cannot be said to have furthered his employer's business. Rather, his decision to conceal his HIV status arose from a purely personal motivation. Therefore, just as New York courts have held that assaultive behavior arising from personal motivations do not further an employer's business, even where it is committed within the employment context, *see e.g., Heindel v. Bowery Savings Bank,* 138 A.D.2d 787, 525 N.Y.S.2d 428 (3d Dep't 1988) (mall security guard's rape of fifteen year old girl "was in no way incidental to the furtherance of [the employer's] interest" and was "committed for personal motives" and was "a complete departure from the normal duties of security guard."), so here must I conclude as a matter of law that Jacks' concealment of his HIV status arose from personal motivation and cannot be considered as within the scope of his employment.

One New York court has found that where "the business purpose alone would not have" prompted the conduct complained of, there

can be no finding of employer liability. *See Rappaport v. International Playtex Corp.,* 43 A.D.2d 393, 397, 352 N.Y.S.2d 241, 246 (3rd Dep't 1974) (in automobile accident involving salaried company sales agent traveling to home of a girlfriend where he intended to do employment-related paperwork, court finds that sales agent was not acting within the scope of employment and respondeat superior did not apply). Here, even if Jacks' conduct arose in part out of his intent to further the business of Prodigy in that his sexual relationship with plaintiff began on line and arguably encouraged plaintiff to use more Prodigy services, there is no "business purpose" which "alone" would have compelled Jacks either to have sex with plaintiff or to hide from her the fact that he had AIDS.

Therefore, considering the factors outlined in *Riviello,* I find, as a matter of law, that Jacks' failure to reveal his HIV status before having sex with plaintiff cannot be deemed to be within the scope of his employment. There is no "connection" in either "time, place, [or] occasion" between his status as a Prodigy employee and his failure to reveal his medical condition to his sex partner. Any "history of the relationship between [Jacks] and [Prodigy] as spelled out in actual practice" only reveals at best, accepting plaintiff's allegations as true, that Prodigy knew that Jacks had AIDS and that he was having sex with customers. It does not reveal that Prodigy knew that Jacks was failing to inform his sex partners that he carried the AIDS virus or that Prodigy did more than remain silent in the face of Jacks' conduct. Clearly Jacks' act, whether it was his sexual conduct or his failure to reveal his medical condition, cannot be considered "one commonly done by such an employee"—there is no allegation that technical advisors in positions such as Jacks' commonly have sex with customers or failed to reveal the fact that they carried communicable diseases. Finally, Jacks' conduct was obviously a "departure from normal methods of performance," and even if Prodigy knew that Jacks was having sex with customers, it could not "reasonably have anticipated" that Jacks was doing so without revealing his medical condition. *See Riviello v. Waldron,* 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (Ct.App.1979).

As an additional consideration, I note that by imposing respondeat superior liability on an employer in a case such as this, I would be setting a precedent under which employers would be forced to monitor, and in some cases control, not only the health of their employees, but also the most intimate aspects of their off-duty lives. Such monitoring would contravene clear law and public policy that prohibits employers from inquiring into the HIV status of employees and attempting to control their off-duty behavior with others. *See* Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (prohibiting discrimination in the workplace based upon an employee's health condition); N.Y.Exec Law § 296 (prohibiting discrimination against persons because of their disability); *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) (explaining that within the constitutional right to privacy there is an "individual interest in avoiding disclosure of personal matters"); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (recognizing a right of privacy, particularly in matters of sexuality); *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994) ("Clearly, an individual's choice to inform others that she has contracted what is at this point invariably and sadly a fatal, incurable disease is one that she should normally be allowed to make for herself. This would be true for any serious medical condition, but is especially true with regard to those infected with HIV or living with AIDS, considering the unfortunately unfeeling attitude among many in this society toward those coping with the disease."); *Doe v. Kohn Nast & Graf, P.C.* 866 F.Supp. 190 (E.D.Pa.1994) (law firm prohibited from searching plaintiff's office upon suspicion that he had AIDS). Given the legal and policy limitations on an employer's ability either to control the off-duty conduct of its employees or to disclose the medical conditions of its employees, I find as a matter of law that Prodigy cannot be held liable for the non-disclosure off-duty conduct of its employee, even if it acquiesces in the conduct by accepting the benefit of increased customer use of its services from that employee's sexual activity.

## II. *Prodigy's Negligent Hiring and Retention of Jacks*

■ Even where an employee does not act within the scope of his employment, "an employer may be required to answer in damages for the tort of an employee against a third party when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm." *Kirkman v. Astoria General Hospital,* 204 A.D.2d 401, 611 N.Y.S.2d 615 (2d Dep't 1994) (citing *Detone v. Bullit Courier Service, Inc.,* 140 A.D.2d 278, 279, 528 N.Y.S.2d 575 (1st Dept.1988)). Here, plaintiff contends that even if Prodigy is not vicariously liable for Jacks' conduct, it is nevertheless liable for its negligent hiring and retention of him as an employee whom they knew to be infected with AIDS and having sex with Prodigy customers. (Compl. at ¶¶ 155–169).

■ What plaintiff fails to allege, however, is that Prodigy knew that Jacks was having unprotected sex with customers without informing them that he carried the AIDS virus. This is a critical distinction because it was not Jacks' having AIDS nor Jacks' having sex with customers which was tortious under the law. Rather, it was Jacks' having unprotected sex with others without informing them that he was HIV positive that plaintiff argues is tortious. *Compare Maharam v. Maharam,* 123 A.D.2d 165, 510 N.Y.S.2d 104 (1st Dep't 1986) (holding that "wife stated legally cognizable causes of action [against husband] for wrongful transmission of genital herpes on theories of either fraud or negligence") *and Doe v. Roe,* 157 Misc.2d 690, 598 N.Y.S.2d 678 (Justice Ct.1993) (explaining that "New York recognizes a cause of action for intentional or negligent communication of a venereal disease") *with id.* 598 N.Y.S.2d at 693 (dismissing action, *inter alia,* because "persons who engage in unprotected sex, at a time of the prevalence of sexually transmitted diseases, including some that are fatal, assume the risk of contracting such diseases. Both parties in an intimate relationship have a duty adequately to protect themselves. When on ventures out in the rain without an umbrella, should they complain when they get wet?"). Because plaintiff here has not, and presumably cannot, allege that Prodigy knew that Jacks was concealing his HIV status from his sex partners or was having unprotected sex with them, plaintiff cannot argue that Prodigy's hiring or retention of Jacks was negligent. *See Kirkman v. Astoria General Hospital,* 204 A.D.2d 401, 403, 611 N.Y.S.2d 615, 616 (2d Dep't), *leave to appeal denied,* 84 N.Y.2d 811, 622 N.Y.S.2d 913, 647 N.E.2d 119 (Ct.App.1994) (employer not liable for negligent hiring or retention of mall security guard who raped a customer where there was no showing that the employer had any knowledge of employee's propensity or history of such misconduct); *Cornell v. State,* 60 A.D.2d 714, 401 N.Y.S.2d 107 (3d Dep't 1977) (holding that where "nothing in the record indicates that the [employer] either knew or should have known of [the employee's] alleged dangerous homosexual tendencies," no liability for negligent hiring or retention of the employee could be found), *aff'd,* 46 N.Y.2d 1032, 416 N.Y.S.2d 542, 389 N.E.2d 1064 (Ct.App.1979).

■ Further, under New York law, when an employee's conduct is beyond the scope of employment, an employer's duty to third parties to prevent misconduct "is limited to torts committed by employees on the employer's premises or with the employer's chattels. . . ." *D'Amico v. Christie,* 71 N.Y.2d 76, 87, 524 N.Y.S.2d 1, 6, 518 N.E.2d 896 (Ct. App.1987). Here, the conduct complained of, whether it is the act of sex or Jacks' failure to disclose his HIV status, unquestionably took place outside the employer's premises and without the employer's chattels.

### *CONCLUSION*

For the reasons discussed above, defendant's motion to dismiss for failure to state a claim is **GRANTED,** and the Clerk of the Court is directed to enter judgment in Defendant Prodigy's favor, dismissing the complaint with prejudice.[3] The Clerk of the

---

**3.** In light of my finding that the action is dismissed for failure to state a claim, I do not reach Prodigy's argument that plaintiff cannot meet the threshold jurisdictional amount for diversity jurisdiction.

Court is also directed to dismiss the action against Jacob Jacks without prejudice pursuant to Fed.R.Civ.P. 4(m) in that plaintiff has not served Jacks within the 120 days specified by the rule and has failed to demonstrate cause for such failure.

**SO ORDERED.**