**Jennifer ROSS, Plaintiff,**

v.

**MITSUI FUDOSAN, INC., Newmark & Co., Rockefeller Center Management Corp., Supreme Building Management, Inc. a/k/a Sbm Inc., Roger Mullarkey, Patricia Ray and Jesse Ruben, Defendants.**

**No. 97 CIV. 0975(PKL).**

United States District Court, S.D. New York.

April 22, 1998.

---

524

Goddard, Ronan & Dineen, P.C., New York, NY (Joseph P. Dineen, Steven Harras, of counsel), for Plaintiff.

Richards & O'Neil, LLP, New York, NY (Eve I. Klein, Joan Walter, Alyson M. Weiss, of counsel), for Defendants Mitsui Fudosan,

Inc. and Rockefeller Center Management Corp.

Kasowitz, Benson, Torres & Friedman LLP, New York, NY (Eric J. Wallach, Jennifer A. Coen, of counsel), for Defendant Newmark & Co.

Rogers & Wells, New York, NY (Mark F. Pomerantz, Warren L. Feldman, David E. McCraw, of counsel), for Defendant Roger Mullarkey.

Akabas & Cohen, New York, NY (Richard B. Cohen, of counsel), for Defendant Patricia Ray.

Ronald P. Fischetti, New York, NY, for Defendant Jesse Rubens.

### OPINION AND ORDER

LEISURE, District Judge.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants Mitsui Fudosan, Inc. ("Mitsui"), Rockefeller Center Management Corporation ("RCMC"), Newmark & Company Real Estate Inc. ("Newmark"), Roger Mullarkey, Patricia Ray, and Jesse Rubens seek dismissal of all or part of the claims pending against them in the instant matter. For the reasons stated below, defendants' motions are granted in part and denied in part.

### BACKGROUND

The following facts are taken from the allegations in the Complaint, which the Court must accept as true for the purposes of this motion. Defendant Supreme Building Management, Inc. ("SBM") hired plaintiff to serve as a concierge at 1251 Avenue of the Americas (the "Building"). Mitsui, through its subsidiary 1251 Americas Associates, owns the Building, and RCMC is the Building's managing agent. Mitsui employed Mullarkey at all times relevant to this action, and Newmark, the Building's leasing agent, employed Rubens. Ray is an officer and agent of SBM and was plaintiff's direct supervisor at the Building.

In approximately May of 1994, SBM, with the consent of Mitsui, RCMC, and Newmark, hired Ross as a concierge at the Building. Soon thereafter, Mullarkey and Rubens, who

plaintiff claims were her supervisors, began making sexual advances toward her. Mullarkey and Rubens sometimes would make these advances individually, and other times would approach plaintiff together. These advances escalated to physical contact, as Mullarkey and Rubens would touch plaintiff in manner she found intimate and offensive. Additionally, Mullarkey and Rubens repeatedly made sexually explicit comments and gestures to Ross.

In June of 1996, Mullarkey and Rubens coerced Ross into accompanying them to an apartment, purportedly occupied by Mullarkey's mother. Once in the apartment, Mullarkey and Rubens forced Ross against her will to view a pornographic videotape containing graphic depictions of sexual acts. Mullarkey and Rubens refused to stop the tape or to allow Ross to leave the apartment, and demanded that she watch the entire tape.

In late August of 1996, Mullarkey and Rubens again coerced Ross into accompanying them to Mullarkey's mother's apartment. Once inside the apartment, Mullarkey and Rubens exposed themselves to plaintiff and Rubens grabbed Ross, pulling her blouse and touching her breasts. Rubens then demanded that Ross kiss him and perform oral sex. Plaintiff struggled and screamed, whereupon Mullarkey and Rubens released her.

Finally, in October, 1996, Rubens directed Ross to join him for lunch at a restaurant near the Building. Shortly after their arrival, and unknown to Ross, Rubens began to masturbate under the table. At his moment of climax, Rubens grabbed Ross's hand, placed it onto his exposed penis, and ejaculated on Ross's hand and body, causing Ross to scream. A restaurant hostess demanded that Rubens and Ross leave the restaurant immediately.

Ross subsequently told her mother of the actions of Rubens, but did not mention Mullarkey. Her mother then telephoned Mullarkey to complain about Rubens's behavior. Mullarkey confronted Ross and instructed her to tell her mother that Rubens no longer worked at the Building. Ross alleges that Mullarkey indicated that he would fire her, if her mother did not drop the matter.

Ross then complained to Ray, her direct supervisor at the Building, about the behavior of Mullarkey and Rubens, and requested that Ray intercede to prevent any further misconduct. Ray instructed plaintiff to keep quiet about the harassment so that SBM would not lose its contract with the Building.

Laura Castel, Mullarkey's former secretary, contacted Ross to inform her of Mullarkey's and Rubens's propensities for sexual harassment. Castel had filed a lawsuit claiming that Mullarkey sexually harassed her. Ross claims that the events surrounding Castel, coupled with the pervasive nature of Ross's harassment, should have made Mitsui and Newmark aware of the conduct of their employees. Ross also claims that Greg Sutherland, the President of Mitsui, was aware of the actions of Mullarkey and Rubens. Additionally, Ross states that SBM, her employer, knew or should have known of the sexually harassing behavior directed toward her at the Building.

Due to the nature and duration of the harassment, and the alleged resulting hostile work environment, Ross left the employ of SBM in November of 1996. She states that she did not quit voluntarily, but that the defendants constructively discharged her. On January 24, 1997, Ross filed a charge of discrimination against the defendants with the Equal Employment Opportunity Commission (EEOC). On February 4, 1997, plaintiff received a notice of right to sue the defendants from the EEOC.

Ross seeks relief based upon a plethora of different legal theories. Several defendants now move the Court to dismiss some or all of the causes of action pending against them. Defendants Mitsui and RCMC seek dismissal of the claims for negligent supervision, vicarious liability, and violations of the New York Human Rights Law ("HRL") (Fifteenth, Seventeenth, Nineteenth, and Twentieth Causes of Action), as pertains to them. Defendants Newmark, Mullarkey, Rubens, and Ray now move for dismissal of all claims against them.

## DISCUSSION

### I. STANDARD FOR MOTION TO DISMISS

In deciding a Rule 12(b)(6) motion, a court "must accept the allegations contained in the

complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80(1957)); *see also Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). However, the Court does not accept as true conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments. *See Clapp v. Greene,* 743 F.Supp. 273, 276 (S.D.N.Y.1990); *see also Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir.1988).

Fed.R.Civ.P. 8(a)(2) requires that a complaint contain "a short a concise statement of the claim showing that the pleader is entitled to relief." "The function of pleadings under the Federal Rules is to give fair notice of the claim asserted. Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial." *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) (Kearse, J.) (quoting 2A *Moore's Federal Practice* ¶ 8.13, at 8–58 (2d ed.1994)); *see also Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). The requirements of Rule 8(a) are not satisfied merely by "a 'bare bones statement' of the legal claim without any supporting facts." *Haber v. Brown,* 774 F.Supp. 877, 879 (S.D.N.Y. 1991). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin,* 861 F.2d at 43. If a court dismisses a complaint for failure to comply with the requirements of Rule 8, it generally should give plaintiff leave to amend. *See Simmons,* 49 F.3d at 86–87.

## II. INDIVIDUAL LIABILITY UNDER TITLE VII

■ In the Complaint, Ross alleges that defendants Mullarkey, Rubens, and Ray violated Title VII of the Civil Rights Act of 1964, § 703(a)(1), Title 42, United States Code ("U.S.C."), Section 2000e–2(a)(1). However, the United States Court of Appeals for the Second Circuit has determined that "an employer's agent may not be held individually liable under Title VII." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir. 1995).

■ Faced with this clear statement by the Second Circuit, Ross argues that the Court should permit her the opportunity to conduct discovery to substantiate her assertion that Mullarkey and Rubens were her "employers" for purposes of Title VII. However, plaintiff does not allege in the Complaint that Mullarkey and Rubens were her "employers," but that they were her "supervisors". Accordingly, plaintiff's request for discovery on this issue must fail. In *Jones v. Capital Cities/ABC Inc.,* 168 F.R.D. 477 (S.D.N.Y.1996), the plaintiff contended that the Court should permit discovery in order to produce facts sufficient to state a cognizable claim. Judge John E. Sprizzo of this Court rejected this tactic, stating:

> [T]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists, and a defendant has a right ... to challenge the legal sufficiency of the complaint's allegations against him, without first subjecting himself to discovery procedures.

*Id.* at 480 (citations omitted); *see also Stoner v. Walsh,* 772 F.Supp. 790, 800 (S.D.N.Y. 1991) (Mukasey, J.); *Shuster v. Prudential Securities Inc.,* No. 91–0901, 1991 WL 102500, *1 (S.D.N.Y. June 6, 1991); *Greene v. Emersons,* 86 F.R.D. 66, 73 (S.D.N.Y.1980); *Petition of State of North Carolina,* 68 F.R.D. 410, 412 (S.D.N.Y.1975) (Duffy, J.).

The Court therefore dismisses the Title VII claims against Mullarkey, Rubens, and Ray. However, the Court grants Ross leave to replead.

## III. LIABILITY OF NEWMARK UNDER TITLE VII

In her Complaint, plaintiff alleges that four distinct entities, SBM, Mitsui, RCMC, and

Newmark, all served as her "employer" at the Building, and she seeks relief from each of them for violations of her Title VII rights. Newmark argues that the Complaint is devoid of any factual allegations that would support the notion that Newmark was Ross's "employer," and moves for dismissal of all Title VII claims against it. Ross contends that SBM, Mitsui, RCMC, and Newmark acted as joint employers, making each liable under Title VII.

The Second Circuit has determined that in Title VII the term " 'employer' ... is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an 'employer' of an aggrieved individual as that term has generally been defined at common law." *Spirt v. Teachers Insurance & Annuity Ass'n,* 691 F.2d 1054, 1063, (2d Cir.1982), *vacated on other grounds,* 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); *see also Kern v. City of Rochester,* 93 F.3d 38, 45 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1335, 137 L.Ed.2d 494 (1997). Under certain circumstances, entities may be so intertwined that they are a "joint employer" for purposes of Title VII. *See Spirt,* 691 F.2d at 1063; *see also Kern,* 93 F.3d at 45; *Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172, 1178 (S.D.N.Y.1992). In *Kern,* the Second Circuit examined whether the entity had the power to hire or fire the plaintiff, to supervise her work or conditions of employment, to determine her rate or method of pay, or to maintain records of her employment. *See Kern,* 93 F.3d at 45. "A party must exercise a direct and significant degree of control over the complaining party's direct employer or the complaining party's work environment to be considered an employer within the meaning of Title VII." *Goyette v. DCA Advertising Inc.,* 830 F.Supp. 737, 744 (S.D.N.Y.1993) (internal quotation marks omitted).

In the Complaint, Ross alleges that SBM, Mitsui, RCMC, and Newmark each interviewed her, approved her retention as concierge, and had the right to control the means and manner of Ross's performance of her work duties. See Complaint at ¶ 7. As the Court must accept the allegations in the Complaint as true, there is a sufficient factual basis to allow the claim to remain.

## IV. INDIVIDUAL LIABILITY UNDER THE HRL

Ross also alleges that individual defendants Mullarkey, Rubens, and Ray discriminated against her because of her sex, in violation of HRL § 296. N.Y. Exec. Law § 296 (McKinney 1993).

### A. *Primary Liability as an Employer*

The New York Court of Appeals has determined that:

A corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination based on age or sex under New York's Human Rights Law (Executive Law, art. 15) ... if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others.

*Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11 (1984); *see also Tomka,* 66 F.3d at 1317. As stated, *supra,* plaintiff makes the claim that SBM, Mitsui, RCMC, and Newmark all functioned as her "employer" at the Building. Ross does not allege that Mullarkey, Rubens, or Ray has any ownership interest in any of these four entities. However, the Complaint contains allegations that Mullarkey and Rubens indicated that they wielded the power to fire Ross from her concierge position. Therefore, the motions of Mullarkey and Rubens to dismiss the HRL claims against them must fail. There are no allegations in the Complaint that Ray had the ability to discharge plaintiff. Accordingly, Ray is not liable as an "employer" under the HRL.

### B. *"Aider and Abettor" Liability*

Section 296(6) of the HRL states that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6) (McKinney's

**530**

1993). The *Tomka* Court distinguished *Patrowich* and held that a defendant who actually participates in the conduct that gives rise to a discrimination claim may be held personally liable under the HRL. *See Tomka,* 66 F.3d at 1317; *see also Steadman v. Sinclair,* 223 A.D.2d 392, 393, 636 N.Y.S.2d 325, 326 (1st Dep't 1996); *Peck v. Sony Music Corp.,* 221 A.D.2d 157, 158, 632 N.Y.S.2d 963, 963 (1st Dep't 1995); *but see Foley v. Mobil Chem. Co.,* 170 Misc.2d 1, 11–12, 647 N.Y.S.2d 374, 380–81 (N.Y. Sup.Ct.1996). The Complaint is replete with factual allegations concerning conduct by Mullarkey and Rubens that, if true, gives rise to an actionable discrimination claim. Mullarkey and Rubens therefore also might be liable as "aiders" and "abettors" under the HRL. However, the Complaint does not state that Ray participated in any conduct that gives rise to a discrimination claim. Just as Ray is not an "employer" under the HRL, she is neither an "aider" nor an "abettor"; the HRL claims against her are dismissed.

## V. LIABILITY OF MITSUI, RCMC, AND NEWMARK UNDER THE HRL

■ To hold an employer liable for the acts of its employees under the HRL, a plaintiff must prove that the employer "became a party to [the discrimination] by encouraging, condoning, or approving it." *Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.,* 65 N.Y.2d 300, 491 N.Y.S.2d 293, 295, 480 N.E.2d 1075 (1985); *see also State Div. Of Human Rights v. St. Elizabeth's Hosp.,* 66 N.Y.2d 684, 496 N.Y.S.2d 411, 412, 487 N.E.2d 268 (1985). "Condonation, which may sufficiently implicate an employer in the discriminatory acts of its employee to constitute a basis for employer liability under the Human ·Rights Law, contemplates a knowing, after-the-fact forgiveness or acceptance of an offense. An employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation." *St. Elizabeth's Hosp.,* 496 N.Y.S.2d at 412, 487 N.E.2d 268. "The doctrine of respondeat superior is not applicable in cases involving sex discrimination unless the complaint alleges that the employer had knowledge or acquiesced in the discriminatory conduct of a

supervisor or co-worker." *Vanscoy v. Namic USA Corp.,* 234 A.D.2d 680, 682, 650 N.Y.S.2d 877, 878 (3d Dep't 1996) (internal quotation marks omitted).

■ In the Complaint. Ross states that these defendants knew or should have known of the harassment of Ross, that the President of Mitsui was aware of the misconduct of Mullarkey and Rubens, and that the defendants did not investigate or discipline Mullarkey or Rubens. She contends that Mitsui, RCMC, and Newmark undertook "calculated inaction" to the discrimination, which constitutes condonation. The true substance of the claim is readily apparent to these defendants such that they have fair notice. As the Court accepts the Ross's allegations as true, the Complaint provides a factual basis sufficient to withstand a motion to dismiss.

## VI. CONSTRUCTIVE DISCHARGE

Plaintiff's twentieth cause of action is a claim based on Title VII and the HRL against all defendants for constructive discharge. Mitsui, RCMC, and Newmark contend that the Complaint fails to plead properly a cause of action for constructive discharge.

■ A constructive discharge occurs when an employer "deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1156 (2d Cir.1993) (Kearse, J.) (internal quotation marks omitted). "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit." *Rivera v. Prudential Ins. Co. of America,* Nos. 95 CV 0829 and 95 CV 0830, 1996 WL 637555 at *14 (N.D.N.Y. Oct.21, 1996) (quoting *Lombardo v. Oppenheimer,* 701 F.Supp. 29, 30 (D.Conn.1987)).

■ The Complaint alleges that Mitsui knew of the conduct of Mullarkey and Rubens and deliberately took no steps to protect Ross. Plaintiff claims that the defendants did not investigate or take any remedial action against Mullarkey and Rubens. Based on the allegations in the

Complaint, the defendants know the true substance of Ross's claims for constructive discharge. As the Court must accept these allegations as true, the claims remain.

## VII. VICARIOUS LIABILITY

 Ross seeks to hold Mitsui, Newmark, and Ray vicariously liable for the torts allegedly committed by Mullarkey and Rubens. "Under New York law, the doctrine of *respondeat superior* renders an employer vicariously liable for a tort committed by an employee while acting within the scope of his employment." *Tomka*, 66 F.3d at 1317 (citing *Riviello v. Waldron*, 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979); *Heindel v. Bowery Savings Bank*, 138 A.D.2d 787, 525 N.Y.S.2d 428 (3d Dep't 1988)). "However, an employer is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business." *Tomka*, 66 F.3d at 1317 (citing *Heindel*, 525 N.Y.S.2d at 428–29; *Island Associated Coop., Inc. v. Hartmann*, 118 A.D.2d 830–31, 500 N.Y.S.2d 315, 316 (2d Dep't 1986)).

 New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context. *See, e.g., Tomka*, 66 F.3d at 1318 (employees' sexual assaults upon co-employee and emotional distress stemming from assaults "were not in furtherance of [employer's] business and were a complete departure from the normal duties" of an employee as a matter of law); *Heindel*, 138 A.D.2d 787, 525 N.Y.S.2d 428 (mall not liable for rape of girl committed by mall security guard in mall security office); *Cornell v. State of New York*, 60 A.D.2d 714, 401 N.Y.S.2d 107 (3d Dep't 1977) (hospital not liable for sexual assault by hospital attendant on an infant under hospital's care). Since the alleged

misconduct of Mullarkey and Rubens falls outside of the employment relationship, the Court dismisses the vicarious liability claims against Mitsui, Newmark, and Ray.[1]

## VIII. PRIMA FACIE TORT

Ross claims that Mullarkey and Rubens are liable for *prima facie* torts they allegedly committed against her. As the defendants properly note,[2] these claims are deficient on their face and must be dismissed.

 Under New York law, there are four elements required to support a claim of *prima facie* tort: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful. *See Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324 (1984). The first element requires "disinterested malevolence", which means that "the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Twin Lab., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir.1990) (citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459 (1983)). Motives such as profit, self-interest, or business advantage will defeat a *prima facie* tort claim. *See Twin Lab.*, 900 F.2d at 571. An "essential element of [*prima facie* tort] is the allegation of special damages, fully and accurately stated with sufficient particularity as to identify and causally relate the actual losses to the allegedly tortious acts." *Broadway & 67th St. Corp. v. City of New York*, 100 a.D.2d 478, 486, 100 A.D.2d 478, 475 N.Y.S.2d 1, 6 (1st Dep't 1984). "Nonspecific conclusory allegations" do not meet the pleading requirement, nor do " '[r]ound figures' or a general allegation of a dollar amount." *Matherson v. Marchello*, 100 A.D.2d 233, 235, 473 N.Y.S.2d 998, 1001 (2d Dep't 1984).

---

1. The Court dismisses the vicarious liability claims in total because the alleged conduct of Mullarkey and Rubens is outside the scope of their employment. An additional ground to dismiss the vicarious liability claim against Ray is that Ray, an employee of SBM, was not the "employer" of either Mullarkey or Rubens.

2. In her opposition to these motions, plaintiff did not address the motions to dismiss her claims of *prima facie* torts.

In her Complaint, Ross does not make any effort to particularize her damages, but merely claims $25 million in compensatory damages. She does not show any causal relation between the tortious conduct alleged and the losses purportedly sustained. Also, Ross makes no allegation that "disinterested malevolence" was the sole motivating force behind the actions of Mullarkey and Rubens. Therefore, the Court dismisses the claims for *prima facie* tort against Mullarkey and Rubens. However, the Court grants Ross leave to replead should she develop a factual basis sufficient to satisfy the pleading requirements for a *prima facie* tort.

## IX. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In New York, a claim for intentional infliction of emotional distress claim must allege four elements: (1) extreme and outrageous conduct, (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (3) a causal connection between the outrageous conduct and injury, and (4) severe emotional distress. *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993). A review of the applicable case authorities shows the heavy burden imposed on a plaintiff to satisfy the first element of this test. *See id.; see also Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86 ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (internal quotation marks omitted)). "[T]he requirements of the rule are rigorous, and difficult to satisfy." *Howell*, 596 N.Y.S.2d at 353, 612 N.E.2d 699 (internal quotation marks omitted); *see also Murphy*, 461 N.Y.S.2d at 236, 448 N.E.2d 86 ("strict standard" for intentional infliction of emotional distress claims).

Ross alleges that she complained to Ray about the conduct of Mullarkey and Rubens and requested that Ray intercede to prevent any further sexual harassment and misconduct. In response, Ray allegedly instructed Ross to remain silent about the harassment so that SBM would not lose its contract with the Building. Even assuming that Ross's allegations are true, as a matter of law this conduct is not so outrageous and extreme to satisfy the very strict standard New York courts have set for claims of intentional infliction of emotional distress. The Court therefore dismisses this claim against Ray.

## X. NEGLIGENT SUPERVISION OF MULLARKEY AND RUBENS

The Court determines that Mitsui and Newmark are not vicariously liable for the alleged actions of Mullarkey and Rubens, since the conduct was outside the scope of their employment. *See* VII, *supra.* However, even where an employee does not act within the scope of his employment, "an employer may be required to answer in damages for the tort of an employee against a third party when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm." *Kirkman v. Astoria Gen. Hosp.*, 204 A.D.2d 401, 403, 611 N.Y.S.2d 615, 616 (2d Dep't 1994) (citing *Detone v. Bullit Courier Service, Inc.*, 140 A.D.2d 278, 279, 528 N.Y.S.2d 575, 576 (1st Dep't 1988)). Further, when an employee's conduct is beyond the scope of employment, an employer's duty to third parties to prevent misconduct "is limited to torts committed by employees on the employer's premises or with the employer's chattels." *D'Amico v. Christie*, 71 N.Y.2d 76, 524 N.Y.S.2d 1, 6, 518 N.E.2d 896 (1987). Ross claims that Mitsui and Newmark negligently supervised Mullarkey and Rubens and are responsible for the injuries she suffered as a result of their conduct.

To survive a motion to dismiss a claim of negligent supervision, a plaintiff must plead facts that show that the employer knew of the employee's propensity for the type of behavior that caused plaintiff's harm. *See Kirkman*, 204 A.D.2d at 403, 611 N.Y.S.2d at 616; *see also Haybeck v. Prodigy Serv. Co.*, 944 F.Supp. 326, 332 (S.D.N.Y. 1996), *appeal dismissed*, 116 F.3d 465, 1997 WL 338844 (2d Cir.1997). Conclusory allega-

tions of negligent supervision are insufficient to overcome a motion to dismiss. *See Richardson v. New York Univ.*, 202 A.D.2d 295, 296, 609 N.Y.S.2d 180, 182 (1st Dep't 1994).

As an initial matter, the vast majority of the misconduct and harassment alleged in the Complaint occurred away from the Building. As Mitsui and Newmark are not liable to Ross on her claims of negligent supervision for any misconduct by Mullarkey and Rubens that occurred away from the Building, the claims necessarily are limited greatly. This factor does not by itself mandate dismissal of the claims, as Ross indicates in the Complaint that some of the harassment occurred at the Building.

■ Ross alleges that Mitsui and Newmark knew or had reason to know of their respective employees' propensities for sexual harassment due to the pervasive nature of the harassment, because Greg Sutherland, the President of Mitsui, was aware of the harassment directed at Ross, and because of the earlier suit brought against Mullarkey by Castel, his former secretary. Again, the Complaint provides notice to the defendants of the true substance of plaintiff's claims.

Ross, however, alleges that Mitsui and Newmark were her "employers". In New York, recovery for injuries caused by an employer's negligence is governed by the Worker's Compensation Law. *See O'Brien v. King World Productions, Inc.*, 669 F.Supp. 639, 641 (S.D.N.Y.1987). "If recovery is available under the Worker's Compensation Law, this recovery will be plaintiff's exclusive remedy against her employer and she will not be able to bring other common law tort claims against her employer." *Persaud v. S. Axelrod Co.*, No. 95 CIV. 7849(RPP), 1996 WL 11197, *5 (S.D.N.Y. Jan.10, 1996); *see also* N.Y. Work. Comp. Law § 11 (McKinney's 1992). "The bar against other tort remedies does not apply however, if the tort alleged was committed by the employer intentionally or 'perpetrated at the employer's direction or instigation.'" *Persaud*, 1996 WL 11197 at *5 (quoting *Thompson v. Maimonides Medical Center*, 86 A.D.2d 867, 868, 447 N.Y.S.2d 308, 310 (2d Dep't 1982)).

Obviously, the tort of negligent supervision alleges a negligent act, not an intentional one. Ross may not bring this claim against her employer, as the exclusivity provision of the Worker's Compensation Law bars the action. As plaintiff sufficiently pleads that Mitsui and Newmark were her "employers", and the Court accepts those allegations as true, the claims for negligent supervision are dismissed.[3]

## XI. SUPPLEMENTAL JURISDICTION

■ Based on the consideration of the defendants' motions, the causes of action that remain are claims under Title VII against Mitsui, RCMC, Newmark, and SBM, claims against Mullarkey and Rubens for intentional infliction of emotional distress, assault, and false imprisonment, and violations of the HRL by Mitsui, RCMC, Newmark, SBM, Mullarkey, and Rubens. Mullarkey and Rubens move for the Court to decline to exercise supplemental jurisdiction and to dismiss the remaining claims against them. The Court denies the motion.

The Court has original jurisdiction over the Title VII claims, and because the remaining claims clearly are "so related" to the Title VII causes of action that they form part of the same case or controversy, the Court has supplemental jurisdiction. 28 U.S.C. § 1367(a). In *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218, the Supreme Court explained that a federal court has jurisdiction over an entire action, including the state-law claims, whenever the federal claims and state claims "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." The Court dismisses, *supra*, the Title VII claims against Mullarkey and Rubens individually. In this situation, the Court still has the power under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over the other claims. *See Mizuna, Ltd. v. Crossland Federal Sav. Bank*, 90 F.3d 650, 657 (2d Cir.1996); *see also Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251,

---

**3.** In her opposition to these motions, plaintiff does not contest the assertion of Mitsui and Newmark that the Worker's Compensation Laws bar a claim of negligent supervision.

254 (2d Cir.1991). However, the Court also has the discretion to remand the claims to state court. *See* 28 U.S.C. § 1367(c); *see also Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

"[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant state-law claims." *Cohill,* 484 U.S. at 350, 108 S.Ct. 614. Although no federal claims remain against Mullarkey and Rubens, Title VII claims are still pending against four other defendants. As Mullarkey and Rubens clearly are the focal point of Ross's allegations, any determination of the Title VII claims necessarily will involve resolution of the allegations that form the basis of the state law claims against Mullarkey and Rubens. The remaining claims against all defendants unquestionably derive from the same nucleus of operative fact such that the factors of judicial economy, convenience, and fairness weigh in favor of one forum. Accordingly, the Court retains jurisdiction over the state law claims.

## CONCLUSION

For the reasons stated above, defendants' motions are HEREBY GRANTED in part and HEREBY DENIED in part. The remaining parties are directed to appear for a pre-trial conference in Courtroom 18B at 500 Pearl Street on June 5, 1998, at 11:30 a.m.

SO ORDERED.