93 F.3d 38
 71 Fair Empl.Prac.Cas. (BNA) 1391
 Wendy L. KERN, Plaintiff-Appellant,
v.
CITY OF ROCHESTER, Fire Department, of the City of
Rochester, Police Department, of the City of Rochester,
Rochester Firefighters Association, Inc., Local 1071 IAFF;
International Association of Firefighters, Daniel Cavuoto,
Individually and as President of Local 1071, IAFF and as a
Full Time City of Rochester Employee and Lt. in the City of
Rochester Fire Department, Charles D. Ippolito, Individually
and as Chief of the City of Rochester Fire Department and
Lloyd Eldridge, Defendants-Appellees.
 No. 1499, Docket 95-9107.
 United States Court of Appeals,
Second Circuit.
 Argued May 16, 1996.
Decided Aug. 15, 1996.
 
 Emmelyn Logan-Baldwin, Rochester, NY, for Plaintiff-Appellant.
 Charles D. Steinman, Rochester, NY (Linda S. Kingsley, Corporation Counsel, Rochester, NY, of counsel), for Defendants-Appellees City of Rochester, Fire Department of the City of Rochester, Police Department of the City of Rochester, and Charles D. Ippolito.
 Bradley A. Sherman, Culley, Marks, Tanenbaum, Capell and Pezzulo, Rochester, NY, for Defendant-Appellee Rochester Firefighters Association, Inc., Local 1071 IAFF.
 Erick J. Genser, Washington, DC (Thomas A. Woodley, Mulholland & Hickey, Washington, DC, of counsel), for Defendant-Appellee International Association of Firefighters.
 Before: MESKILL and MINER, Circuit Judges, and LASKER, District Judge.*
 MINER, Circuit Judge:
 
 
 1
 Plaintiff-appellant Wendy L. Kern appeals from a judgment entered in the United States District Court for the Western District of New York (Telesca, C.J.) denying her motions to amend her complaint and dismissing the complaint for failure to state claims upon which relief can be granted. Kern alleged in the complaint, inter alia, that defendants-appellees City of Rochester (the "City"), the Fire Department of the City of Rochester (the "RFD"), Daniel Cavuoto, and Charles Ippolito (together, the "City Defendants") were liable, pursuant to 42 U.S.C. § 1983, for unconstitutional employment discrimination. In her first proposed amended complaint, Kern repleaded her § 1983 claims against the City Defendants and added a cause of action for employment discrimination against the City Defendants and defendant-appellee Rochester Firefighters Association, Inc., Local 1071 IAFF ("Local 1071") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. In the first of three Decisions and Orders, the district court found that Kern failed to state a claim under § 1983, and that it would be futile to allow Kern to amend her complaint to add a Title VII action because she could not sustain a Title VII action against either the City Defendants or Local 1071. In her second proposed amended complaint, Kern alleged Title VII violations as her sole federal cause of action. In two subsequent Decisions and Orders, the district court again found that it would be futile to allow Kern to add a Title VII action and therefore denied Kern's motion to amend her complaint. On October 5, 1995, judgment was entered dismissing Kern's complaint.
 
 
 2
 For the reasons that follow, we affirm the judgment of the district court.
 
 BACKGROUND
 
 3
 In September of 1992, Kern began her employment as a secretary for Local 1071. Local 1071 is the Rochester branch of the International Association of Firefighters and is the collective bargaining agent of the firefighters employed by the City. Kern's immediate supervisor was Cavuoto, the president of Local 1071. Cavuoto was a Lieutenant in the RFD,[1] and he also operated a private business known as "Life Safety" with his partner, Lloyd Eldridge. The Life Safety offices were located in the same building as the offices of Local 1071.
 
 
 4
 In her complaint, Kern alleged that Cavuoto sexually harassed her on numerous occasions between September and December of 1992. The alleged harassment initially consisted of Cavuoto's attempts to engage Kern in conversations of a sexual nature, but culminated in Cavuoto's physical assault of Kern on December 30, 1992. On that day, according to the complaint, Cavuoto and Eldridge invited Kern to "have a holiday drink" with them in the Life Safety offices. After consuming some wine, Kern claims that she began to feel "drunk and out of control." She excused herself and went to the bathroom located in the Local 1071 offices. Shortly thereafter, Cavuoto entered the bathroom and pushed Kern against the bathroom sink. Kern resisted Cavuoto's advances and then lost consciousness. According to Kern, when she regained consciousness, she was partially disrobed and lying on the office floor with Cavuoto standing above her naked below the waist. Kern immediately dressed and left the office. The next day, Kern reported the incident to the Rochester Rape Crisis Center.
 
 
 5
 Following the assault, Kern sought the assistance of the Rochester Police Department (the "RPD") and Local 1071. On January 19, 1992, Kern met with John McMenemy, who was the treasurer of Local 1071 and a lieutenant in the RFD, to discuss the alleged assault. McMenemy prepared a report of Kern's allegations, which was signed by Kern and McMenemy. McMenemy then provided the report to the City's Corporation Counsel, the executive board of Local 1071, and Ippolito, who at that time was the Chief of the RFD.
 
 
 6
 On February 24, 1993, Kern and her attorney met with representatives of the RPD to file a criminal complaint against Cavuoto. Kern was introduced to Detective D'Ambrosio and Investigator Ruvio, who told Kern that they would investigate her allegations. Although the detectives commenced an investigation, the record does not indicate that Cavuoto was charged with any crime.
 
 
 7
 In March of 1993, McMenemy discussed Kern's allegations against Cavuoto with Ippolito. According to Kern, Ippolito told McMenemy that he was "in big trouble" for reporting Kern's allegations to the executive board of Local 1071, and that, not only was his career in the RFD in jeopardy, but also his union position would be lost if "the members [found] out what [he] did." Two days later, McMenemy was denied promotion to Captain in the RFD.
 
 
 8
 On June 28, 1993, Kern commenced the action giving rise to this appeal. In her complaint, Kern alleged, inter alia, that the City Defendants were liable under § 1983 for violating her rights to equal protection, due process, and free speech. According to Kern, Cavuoto was liable under § 1983 because he sexually harassed and assaulted her during her employment as his secretary, and therefore deprived her of her right to equal protection. Kern further claimed that the City was liable under § 1983 because it had knowledge of Cavuoto's "womanizing," but failed to take any action to discipline him and therefore deprived Kern of her rights to equal protection and due process. Finally, Kern alleged that the RFD and Ippolito were liable under § 1983 because they retaliated against her for complaining of Cavuoto's sexual harassment by denying McMenemy a promotion to Captain in the RFD, and thus deprived her of her First Amendment right to free speech.
 
 
 9
 On August 13, 1993, Kern moved to amend her complaint. In the proposed amended complaint, Kern added a cause of action under Title VII against the City Defendants and Local 1071. Kern also repleaded her § 1983 claims against the City Defendants. Thereafter, the City Defendants and Local 1071 moved, under Fed.R.Civ.P. 12(b)(6), to dismiss the complaint.
 
 
 10
 By a Decision and Order dated November 23, 1993, the district court granted the motions of the City Defendants and Local 1071 to dismiss Kern's complaint. The district court found that Kern failed to state a claim under § 1983 against the City or the RFD because she was unable to plead any facts indicating that the deprivation of her civil rights was the result of a policy or custom. The district court also found that Kern failed to state a § 1983 claim against Cavuoto because she failed to show "that any alleged wrongful actions attributed to Mr. Cavuoto were committed under color of state law." Finally, the district court dismissed Kern's retaliation claims, finding that she did not have standing to assert that McMenemy had been deprived of his civil rights on account of her complaint against Cavuoto.
 
 
 11
 The district court also denied Kern's motion to amend her complaint. The court found that the amendment would be futile because her Title VII claims would fail, since neither the City nor Local 1071 was an employer for purposes of Title VII. However, the district court granted Kern leave to move to file an amended complaint setting forth a valid cause of action under Title VII.
 
 
 12
 On January 19, 1994, Kern again moved to amend her complaint and also moved for reconsideration of the November 23, 1993 order. Her second proposed amended complaint differed from the original complaint in that she did not allege any violations of § 1983 and her sole federal cause of action was under Title VII. By a Decision and Order dated December 1, 1994, the district court denied Kern's motion to amend her complaint to add a Title VII cause of action against the City Defendants, but found that a hearing was necessary to determine whether Kern could sustain a Title VII cause of action against Local 1071. The district court also denied Kern's motion for reconsideration of the November 23, 1993 Decision and Order.
 
 
 13
 On August 14, 1995, an evidentiary hearing was held to determine whether Kern could maintain a Title VII claim against Local 1071. The only issue at the hearing was whether Local 1071 had the requisite number of employees to be considered an employer for purposes of Title VII. By a Decision and Order dated October 5, 1994, the district court found that Local 1071 did not have the requisite number of employees to be considered an employer for purposes of Title VII, and thus concluded that Kern could not make out a Title VII cause of action against Local 1071. Accordingly, a final judgment was entered dismissing Kern's complaint.
 
 This appeal followed.DISCUSSION
 I. Section 1983 Claims
 
 14
 Kern first argues that the district court erred in dismissing her § 1983 claim against the City Defendants. We disagree.
 
 A. Claim against Cavuoto
 
 15
 Kern contends that Cavuoto is liable under § 1983 because he violated her right to equal protection when he sexually harassed and assaulted her while she was employed as his secretary. In order to state a claim under § 1983,[2] a plaintiff must allege a violation of rights secured by the Constitution or laws of the United States, and that such violation was committed by a person acting under the color of state law. See Greenwich Citizens Comm., Inc. v. Counties of Warren and Washington Indus. Dev. Agency, 77 F.3d 26, 29-30 (2d Cir.1996). Because we have held that sex-based discrimination, including sexual harassment, may be actionable under § 1983 as a violation of equal protection, see, e.g., Annis v. County of Westchester, 36 F.3d 251, 254 (2d Cir.1994), Kern adequately pleaded a violation of rights secured by the Constitution. The issue in dispute on this appeal is whether Cavuoto was acting under the color of state law when he allegedly deprived Kern of her right to equal protection.
 
 
 16
 The Supreme Court has stated that "[t]he traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." Id. at 49-50, 108 S.Ct. at 2255-56. Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law. See Polk County v. Dodson, 454 U.S. 312, 319-20, 102 S.Ct. 445, 450-51, 70 L.Ed.2d 509 (1981).
 
 
 17
 The district court found that Cavuoto was not acting under the color of state law when he harassed and assaulted Kern. The district court noted that the complaint makes it clear that, although Cavuoto was a lieutenant in the RFD, he was acting solely in his capacity as Local 1071's president during his contacts with Kern. Kern, nevertheless, argues that Cavuoto was acting under the color of state law because the sexual harassment and assault occurred while Cavuoto was receiving full-time pay and benefits from the City. Kern also claims that the fact that the harassment and assault occurred at Local 1071's offices, where Cavuoto regularly conducted business with city employees, demonstrates that he was acting under the color of state law.
 
 
 18
 We think that Kern fails to demonstrate that Cavuoto "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " West, 487 U.S. at 49, 108 S.Ct. at 2255 (quoting Classic, 313 U.S. at 326, 61 S.Ct. at 1043). First, Cavuoto did not hold his position as president of Local 1071 by virtue of any action by the City. Cavuoto was elected president by union members, irrespective of his position in the RFD. Furthermore, in his capacity as Local 1071's president, Cavuoto performed functions solely for the benefit of the union, not for the benefit of the City. Finally, while Cavuoto may have met with City officials in Local 1071's offices, this does not alter the fact that he did so in his capacity as president of Local 1071 and not as an employee of the RFD. Accordingly, we think that the district court properly dismissed Kern's § 1983 claims against Cavuoto.
 
 B. Claim against the City
 
 19
 Kern claims that the City is liable under § 1983 because it knew of Cavuoto's "womanizing" and failed to stop it. Under Kern's theory, the City's duty to prevent Cavuoto's alleged womanizing arose from its supervisory relationship with Cavuoto. Kern claims that this relationship existed because the City paid Cavuoto a full salary and provided him with benefits while he was president of Local 1071. Even assuming that Cavuoto could be considered to have been under the City's supervision while he was the president of Local 1071, we think that the district court properly dismissed her § 1983 claim against the City.
 
 
 20
 We have held that, "[i]n order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir.1996). Furthermore, " 'circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction,' " can support a finding that such a policy exists. Id. (quoting Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir.1991)). The policy or custom need not be memorialized in a specific rule or regulation. Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir.1992). However, when discriminatory practices of city officials become "persistent and widespread," they may be considered to constitute a municipal custom or usage. Id. at 870-71.
 
 
 21
 Kern argues that the fact that the City knew of Cavuoto's harassment yet failed to take any affirmative action to prevent Cavuoto from committing further harassment demonstrates a policy of support for the harassment. We think that Kern fails to demonstrate that Cavuoto's harassment and assault occurred as a result of a municipal custom or policy. There is no indication that either the City or Cavuoto's superiors at the RFD knew of Cavuoto's alleged womanizing. The record does not reveal that, prior to Cavuoto's alleged assault, Kern or anyone else ever complained about Cavuoto to the City or to Cavuoto's superiors at the RFD. Moreover, while Kern claims that it was well-known around the Firehouse that Cavuoto was a "pig" who had stated that he hires secretaries "with fast hands and slow lips," these assertions are wholly conclusory and are not sufficient to defeat a Fed.R.Civ.P. 12(b)(6) motion to dismiss. See Butler v. Castro, 896 F.2d 698, 700 (2d Cir.1990) ("A conclusory allegation ... without evidentiary support or allegations of particularized incidents, does not state a valid claim."). Accordingly, Kern's § 1983 claims against the City properly were dismissed.
 
 C. Claim against RFD and Ippolito
 
 22
 Finally, Kern claims that the RFD and Ippolito are liable under § 1983 for retaliating against McMenemy by denying him a promotion to Captain in the RFD after he reported Cavuoto's harassment and assault to the executive board of Local 1071 and the RFD. We think that the district court properly found that Kern lacks standing to raise a § 1983 claim on the basis of retaliation against McMenemy.
 
 
 23
 In Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court stated that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Id. at 499, 95 S.Ct. at 2205. In the present case, Kern does not argue that she personally was retaliated against by the RFD or Ippolito. Instead, she attempts to rest her retaliation claim on an alleged violation of McMenemy's civil rights. Because this is precisely what Warth forbids, Kern's retaliation claim properly was dismissed.
 
 II. Title VII claims
 
 24
 Kern argues that the district court erred by failing to allow her to amend her complaint to add Title VII claims against the City and Local 1071. We disagree.
 
 
 25
 Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a). The term "employer" is defined in Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). "Title VII is an employment law, available only to employees (or prospective employees) seeking redress for the unlawful employment practices of their employers." Tadros v. Coleman, 717 F.Supp. 996, 1002 (S.D.N.Y.1989), aff'd, 898 F.2d 10 (2d Cir.), cert. denied, 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990).
 
 A. Claim against the City
 
 26
 In denying Kern's motion to amend her complaint to add a Title VII cause of action against the City, the district court found that the City was not Kern's employer under Title VII and that "there was no direct connection between the [City's] actions and the claimed harm to [Kern]." While Kern concedes that she was not directly employed by the City, she claims that her job would not exist but for the employment of the firefighters for whom she works and the employment contract between the RFD employees and the City. Kern argues that, because of this connection, the City should be considered her employer for purposes of Title VII.
 
 
 27
 In support of her argument, Kern points to Spirt v. Teachers Insurance & Annuity Ass'n, 691 F.2d 1054 (2d Cir.1982), vacated on other grounds, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983). In Spirt, the plaintiff, a female professor at Long Island University ("LIU"), brought a Title VII action against two annuity fund management companies with which LIU had contracted to manage the retirement program for its employees. The plaintiff claimed that the companies violated Title VII by using sex-based mortality tables to calculate the benefits for plan participants. In determining that the companies were liable under Title VII, we stated that "the term 'employer,' as it is used in Title VII, is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities." Id. at 1063 (quotation marks omitted). We went on to hold that, although the companies did not directly employ the plaintiff, the companies could be considered her "employer" under Title VII because the companies were "closely intertwined" with LIU in light of the fact that LIU delegated to the companies its responsibility to provide retirement benefits. Id. We also noted that the finding of an employment relationship between the companies and the plaintiff was supported by the facts that the plaintiff's participation in the retirement program was mandatory and that LIU shared in the administrative responsibilities of the retirement program. Id.
 
 
 28
 Spirt, however, is distinguishable from the present case. First, Local 1071, unlike LIU in Spirt, has not delegated any of its employment responsibilities to the City. Furthermore, there is no indication that the City shared any of Local 1071's administrative responsibilities. The City had no authority to hire or fire Kern, to supervise her work or conditions of employment, to determine her rate or method of pay, or to maintain records of her employment. Indeed, Kern fails to allege that her employment at Local 1071 was affected by the City in any way. The only connection that Kern alleges between the City and her employment at Local 1071 is that Local 1071--and therefore her job--would not exist without a city fire department. However, we think that this relationship is too tenuous to bring the City under the Title VII definition of employer. Therefore, the district court properly denied Kern's motions to amend her complaint to add a Title VII action against the City.
 
 B. Claim against Local 1071
 
 29
 In denying Kern's motion to amend her complaint to add a Title VII cause of action against Local 1071, the district court held that, in order for Local 1071 to be deemed an "employer" within the meaning of Title VII and thus be amenable to a Title VII cause of action, it must have at least 15 employees. The district court, following an evidentiary hearing, determined that "Local 1071 had only five employees during all times relevant to the complaint." Therefore, the district court determined that it would be futile to allow Kern to amend her complaint to add a Title VII cause of action against Local 1071.
 
 
 30
 Kern claims that the district court erred in two regards. First, Kern claims that the district court erred in holding that she must prove that Local 1071 employed at least 15 employees during the alleged discrimination in order for her to maintain a Title VII action against Local 1071. According to Kern, because Local 1071 is a labor organization, there is no minimum number of employees requirement to maintain an action under Title VII. In the alternative, Kern claims that the district court erred in determining that Local 1071 employed fewer than 15 employees during the alleged discrimination.
 
 
 31
 In support of her argument that she need not demonstrate that Local 1071 had 15 employees in order to maintain her Title VII cause of action, Kern points to the EEOC Compliance Manual, Volume II, § 605, Appendix N. The manual explains that both labor organizations and employment agencies with fewer than 15 employees may be covered by Title VII if they regularly deal with employers covered by Title VII. According to Kern, because Local 1071 regularly deals with the City, an employer covered by Title VII, she need not demonstrate that Local 1071 has 15 employees.
 
 
 32
 We know of no federal court that has adopted this interpretation of Title VII. To the contrary, it consistently has been held that, when a plaintiff brings a Title VII action against a union in its capacity as an employer, the plaintiff must demonstrate that the union meets the Title VII definition of "employer." On the other hand, if a plaintiff brings a Title VII action against a union in its capacity as a labor organization, the plaintiff must demonstrate that the union meets that statutory definition of a "labor organization."[3] See Yerdon v. Henry, No. 95-7604, 1996 WL 438933, at * 6 (2d Cir. Aug.6, 1996) (holding "a labor organization with fewer than fifteen employees cannot be sued as an employer for discrimination under Title VII of the 1964 Civil Rights Act"); Chavero v. Local 241, 787 F.2d 1154, 1155 n. 1 (7th Cir.1986) (holding that "[u]nder Title VII a union can be both an 'employer' and a 'labor organization,' " and noting that "[w]here ... a plaintiff attempts to hold the union liable in its employer capacity, [the union] must fall under that definition, just as any other employer." (citation omitted)); cf. Herman v. United Bhd. of Carpenters & Joiners, 60 F.3d 1375, 1384 (9th Cir.1995) (holding that, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., which contains definitions of "employer" and "labor organization" that are virtually identical to those in Title VII, a plaintiff who sues a union in its capacity as an employer must demonstrate that the union meets the statutory definition of employer); Greenlees v. Eidenmuller Enters., Inc., 32 F.3d 197, 198-99 (5th Cir.1994) (stating that an employment agency can be classified as either an employer or an employment agency, but, when it is sued in its capacity as an employer, plaintiff must demonstrate that it meets the Title VII definition of employer). In the present case, because Kern is suing Local 1071 in its capacity as her employer, not in its capacity as a labor organization, the district court properly determined that Kern must demonstrate that Local 1071 meets the Title VII definition of an employer. This definition requires that Local 1071 have at least 15 employees. See 42 U.S.C. § 2000e(b). Accordingly, we now turn to the issue of whether the district court erred in determining that Kern failed to demonstrate that Local 1071 had 15 employees.
 
 
 33
 The district court found that Kern and Local 1071's four officers--the president, the vice president, the secretary, and the treasurer--were the only employees of Local 1071. The district court explicitly rejected Kern's claim that the eight non-officer members of Local 1071's executive board, along with the sergeant-at-arms and three other persons who provided services to Local 1071, were employees for purposes of Title VII. Because Kern's claim necessarily rests on whether the district court erred in determining that the eight non-officer board members were not employees, we only address this issue.
 
 
 34
 Title VII defines an employee as "an individual employed by an employer." 42 U.S.C. § 2000e(f). Courts have held that directors or board members, while traditionally viewed as employers, can be considered employees depending upon their responsibilities within the business. See, e.g., EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529, 1539-40 (2d Cir.1996) (holding that directors of an insurance brokerage firm were employees for purposes of the ADEA because each performed traditional employee duties, worked full-time for the firm, and reported to senior members of the firm). In Chavero, the Seventh Circuit stated that, "[a]lthough a director may accept duties that make him also an employee, a director is not an employee because he draws a salary. Rather, the primary consideration is whether an employer-employee relationship exists." 787 F.2d at 1157 (citations omitted). In EEOC v. First Catholic Slovak Ladies Ass'n, 694 F.2d 1068 (6th Cir.1982), cert. denied, 464 U.S. 819, 104 S.Ct. 80, 78 L.Ed.2d 90 (1983), the Sixth Circuit held that persons who were directors and officers could be considered employees under the ADEA because the individuals "performed traditional employee duties" such as "maintaining records, preparing financial statements, [and] managing the office." Id. at 1070.
 
 
 35
 In the present case, Kern fails to demonstrate that a traditional employee-employer relationship existed between the eight non-officer board members and Local 1071. The function of the eight non-officer board members was to represent their various constituencies on a board that made and directed the policy of Local 1071 and exercised general oversight over Local 1071's officers. There is no indication that any of the non-officer board members performed any traditional employee duties, such as maintaining records or managing the office. Moreover, there is no indication that the non-officer board members were responsible to anyone but themselves. Thus, the district court properly found that the non-officer members of Local 1071's executive board were not employees for purposes of Title VII. Without these eight members being considered employees, Kern is unable to demonstrate that Local 1071 had 15 employees. Accordingly, the district court correctly found that it would be futile to allow Kern to amend her complaint to add a Title VII action against Local 1071.
 
 CONCLUSION
 
 36
 We have considered Kern's other contentions, and we find them all to be without merit. In view of the foregoing, we affirm the judgment of the district court.
 
 
 
 *
 The Honorable Morris E. Lasker of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Pursuant to a contract between the City and Local 1071, Cavuoto was granted "release time" from his job with the RFD to allow him to perform his duties as president of Local 1071. However, Cavuoto still received full pay and benefits from the City as if he were a full-time employee of the RFD
 
 
 [2]
 Section 1983, in part, provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [3]
 42 U.S.C. § 2000e(d) states, in part:
 The term "labor organization" means a labor organization engaged in an industry affecting commerce, and any agent of such an organization, and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment....