**Atoya ALEXANDER, Plaintiff,**

v.

**The CITY OF NEW YORK, The New York City Police Department, Lieutenant Gatto, in his individual and official capacity; Sergeant Leroy, in his individual and official capacity, Defendants.**

**No. 11–cv–4638(NG)(MDG).**

United States District Court,
E.D. New York.

July 23, 2013.

Linda Cronin, Ilya Mordukhaev, Susan P. Bernstein, Cronin & Byczek LLP, New Hyde Park, NY, Dominick Peter Revellino, Rocco G. Avallone, Cronin & Byczek, LLP, Lake Success, NY, for Plaintiff.

Daniel Sergio Gomez–Sanchez, Jane E. Andersen, NYC Law Department, New York, NY, for Defendants.

## OPINION & ORDER

GERSHON, District Judge:

Plaintiff Atoya Alexander ("Alexander") brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, and the New York State and City Human Rights Laws, against Defendants the City of New York (the "City"), the New York City Police Department (the "NYPD"), Lieutenant Gatto and Sergeant Leroy.[1] This Opinion addresses defendants' motion to dismiss the Complaint in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] For the reasons set forth below, defendants' motion is granted in part and denied in part.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff, an African–American woman, alleges that, during the time of her employment as a probationary officer with the NYPD, from January 7, 2008 through May 27, 2010, she was subjected to discrimination on the basis of her race and gender. This discrimination took the form of both a hostile working environment and disparate treatment. She also alleges that she was retaliated against for complaining about racist conduct.[3]

Specifically, with respect to the alleged racist conduct, plaintiff alleges that, in October 2009, Sergeant Leroy, plaintiff's supervisor in the Conditions Squad of the 5th Precinct, "openly announced that he was going to make someone his 'slave for the day,'" and that plaintiff took this comment "personally since she was the only African American in the room." (Compl. ¶ 15.) Plaintiff alleges that she complained about this incident to Lieutenant Gatto, who neither reported it to the NYPD Office of Equal Opportunity, nor disciplined Sergeant Leroy. (Id.) These are the only allegations of discriminatory treatment relating to plaintiff's race.

After she complained to Lieutenant Gatto, plaintiff alleges that Sergeant Leroy retaliated against her by "imposing upon [her] an illegal ticket quota and then informing her that he was still going to continue to retaliate," and then by "ordering her to take an unlicensed vendor arrest and when she informed him that she already had numerous for the month [he] threatened plaintiff with discipline." (Id.) Moreover, "Sergeant Leroy then specifically informed plaintiff that this was his way of teaching her a lesson and she had failed." (Id) There is no timeframe associated with this alleged retaliatory activity, and there is no other activity which is alleged to have been in retaliation for plaintiff's complaint about Sergeant Leroy's comment.

---

1. Neither the caption nor the Complaint refers to the individual defendants by their full names, but rather, only by their ranks and last names; I use the same convention throughout this Opinion.

2. Although the caption includes the NYPD as a defendant, the Complaint does not list the NYPD amongst the parties, nor does it assert any claims against it. Any claims purportedly asserted against the NYPD are dismissed.

3. Plaintiff also alleges that she was terminated "in a fashion not in accordance with the custom, policy and practice in that [she] had no notice, due process or representation by her Union or her Union attorney." (Compl. ¶ 19.) This due process claim has been withdrawn. (See Mem. in Opp., at 24.)

With respect to the claim of a gender-based hostile working environment, plaintiff alleges that Lieutenant Gatto made inappropriate comments about her civilian clothing, sent her a picture of his house in Florida and invited her to visit him, and "monitored" her by sending text messages and calling her when she was not on duty. (*Id.* ¶ 18.) Plaintiff also alleges that, while both she and Lieutenant Gatto were on duty on January 1, 2010, Lieutenant Gatto sent text messages and e-mails, in which he notified her as to his location and invited her to "join him and bring something to drink." (*Id.*)

Plaintiff's claim of gender-based discrimination/disparate treatment arises from her allegations that she and the only other female probationary officer on the Conditions Squad of the 5th Precinct were regularly denied the opportunity to work certain, desirable, paid details, while the requests of similarly situated male officers to work these details were regularly granted. (*Id.* at 17.) Plaintiff does not allege the specific dates upon which these requests were made or denied. Plaintiff also alleges that on August 14, 2009, following a "minor off duty verbal incident with a neighbor," her probationary period was extended by six months as a disciplinary measure. (*Id.* ¶ 19.) She alleges that she was then terminated on May 27, 2010, and that she "was not given a reason for her termination," but that she believes she was terminated in connection with the off-duty incident, while similarly situated male probationary officers were not terminated after engaging in far more offensive off-duty conduct. (*Id.*)

Plaintiff makes no other allegations that would connect her termination with either the alleged racism (or her reporting of it), or with the alleged sexual harassment.

Nor does she allege what, if any, role the individual defendants played in her termination or in the denial of her applications for paid details. Plaintiff asserts against the City claims of race and gender discrimination and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff also asserts against all defendants identical claims pursuant to 42 U.S.C. §§ 1981 and 1983, and the New York State and New York City Human Rights Laws (N.Y. Exec. Law §§ 290 et seq. and N.Y.S. Admin. Code § 8–107(7), respectively).[4]

Defendants move to dismiss the Title VII claims as time-barred under the 300–day statute of limitations effectively imposed by 42 U.S.C. § 2000e–5(e)(1), as well as because plaintiff failed to exhaust her administrative remedies, as required, and further, because they fail to state a claim upon which relief may be granted. Defendants also move to dismiss the §§ 1981 and 1983 claims on the basis that plaintiff has failed to plausibly allege a claim. Finally, defendants request that the court decline to exercise supplemental jurisdiction over the City and State Human Rights Law claims, in the event that the federal claims are dismissed; defendants make no other arguments with regard to these claims. Plaintiff generally opposes the motion to dismiss, arguing that her Title VII claims are timely under the continuing violation doctrine, and that her constitutional claims do, in fact, state a claim. However, she has withdrawn her § 1983 claim against the City in accordance with *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). (*See* Mem. in Opp., at 22–24.) She has also, as noted, withdrawn her due process claim and acknowledged that her

---

4. Although plaintiffs allegations relating to her claims under Sections 1981,1983 and the Human Rights Laws refer to a "Sgt. Riley," there appears to be no dispute that these claims are, in fact, directed at Sergeant Leroy. (*See* Compl. ¶¶ 26–38.)

§ 1981 claim can proceed only against the individual defendants acting in their individual capacities, since the City and the individual defendants acting in their official capacities are state actors.[5]

The only claims still subject to this motion, then, are those arising under Title VII and the City and State Human Rights Laws against the City, and those under §§ 1981 and 1983, which are asserted against the individual defendants only.

## DISCUSSION

### I. Timeliness of the Title VII Claims

Title VII of the Civil Rights Act of 1964 ("Title VII") makes it unlawful for an employer "to discriminate against any individual with respect to ... privileges of employment, because of such individual's race, color, sex, or national origin," or to "deprive any individual of employment opportunities ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Title VII further prohibits discrimination against an employee "because he has opposed any practice made unlawful by this subchapter." 42 U.S.C. § 2000e–3(a). As set forth above, plaintiff contends, pursuant to Title VII, that defendants discriminated against her based on her race and gender by subjecting her to a hostile work environment and by treating her differently from other, similarly situated employees, and further, that defendants retaliated against her for complaining about racial discrimination.

In order to assert a Title VII discrimination or retaliation claim, a plaintiff in a state such as New York, "that has an entity with the authority to grant or seek relief with respect to the unlawful practice," must file a charge with the Equal Employment Opportunity Commission (the "EEOC") within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); *accord National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114, 122 S.Ct. 2061. Where the claim is one of a hostile working environment, however, it is, by nature, comprised of a "series of separate acts that collectively constitute one 'unlawful employment practice.' ... Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117, 122 S.Ct. 2061 (*quoting* 42 U.S.C. § 2000e–5(e)(1)).

Here, plaintiff filed an intake questionnaire with the EEOC on March 11, 2011, and an EEOC Charge of Discrimination on April 20, 2011. (*See* Gomez–Sanchez Decl.[6] Exhs. A, B.) Where the intake questionnaire contains a request for the agency to act, it may be considered a "charge" for the purpose of ascertaining the statutory period,[7] and defendants concede that, in

---

**5.** *See Jett v. Dallas Independent School District,* 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (the § 1983 "action at law" constitutes "the exclusive federal damages remedy for the violation of the rights guaranteed in § 1981 when the claim is pressed against a state actor").

**6.** Declaration of Assistant Corporation Counsel Daniel Gomez–Sanchez, February 28, 2012, ECF Document # 19.

**7.** *See Federal Express Corp. v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) (intake questionnaire considered a charge in the context of the Age Discrimination in Employment Act of 1967 ("ADEA"). *Cf. Winston v. Mayfair Care Center, Inc.,* 2011 WL 10045251, at *4 (E.D.N.Y., March 4, 2011) (collecting cases and noting that, "because the EEOC's regulations setting forth the basic information required of a charge are almost identical under [the ADEA and Title

this case, the statutory period is calculated from March 11, 2011. Thus, the conduct giving rise to plaintiff's Title VII claims must have occurred between May 15, 2010 and March 11, 2011.

## A. The Gender Discrimination Claims

The only instance of discriminatory conduct which is alleged to have taken place during this time period is the termination of plaintiff's probationary employment, on May 27, 2010. Since she alleges that the termination, itself, is the result of disparate treatment on the basis of her gender, defendants concede that this aspect of her Title VII claim is timely—although they nonetheless attack it on the basis that it fails to state a claim, as is discussed *infra.*

The other allegations that form the basis for Alexander's disparate treatment claim are those relating to the denial of her applications for paid details. However, in the absence of allegations setting forth the dates on which any of these denials occurred, and given the narrow window of time between the commencement of the statutory period (May 15, 2010) and the termination of plaintiff's employment (May 27, 2010), there is no basis upon which to infer that any of her applications were denied within the statutory period. This portion of the gender-based disparate treatment claim is therefore dismissed as time-barred.

 With respect to the sexual harassment claim, the only specific date on which the subject conduct is alleged to have taken place is January 1, 2010 (*see* Compl. ¶ 18), which falls outside of the statutory period. Plaintiff argues that this Title VII, gender-based hostile work environment claim is nonetheless timely under the continuing violations doctrine. Since a hostile work environment claim is necessarily composed of a series of separate

acts, it "does not matter that some of the component acts fall outside the statutory time period. *Provided that an act contributing to the claim occurs within the filing period,* the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *National Railroad Passenger Corp.,* 536 U.S. at 117, 122 S.Ct. 2061 (emphasis added). Here, however, the *only* act or occurrence that is alleged to have taken place within the statutory period is plaintiff's termination, on May 27, 2010, and there is nothing in the Complaint or in the EEOC filings that connects her termination with the conduct which she alleges comprised the sexual harassment. In other words, although her Complaint contains allegations of a hostile working environment resulting from the attention from Lieutenant Gatto, there is no allegation that these occurrences led to, or even continued up until her termination, and the Complaint does not give rise to such an inference. Plaintiff's Title VII claims relating to sexual harassment/gender-based hostile working environment are therefore dismissed as time-barred. *See id.* at 113, 122 S.Ct. 2061 (plaintiff "could not use a termination that fell within the limitations period to pull in the time-barred discriminatory act. Nor could a time-barred act justify filing a charge concerning a termination that was not independently discriminatory").

## B. The Racial Discrimination and Retaliation Claims

 Plaintiff's Title VII claims relating to race are also untimely. The only specific conduct Alexander alleges to have given rise to discrimination on the basis of her race is the comment, made by Sergeant Leroy in October 2009, that he would make someone his "slave for the day," and the retaliatory actions Sergeant

VII), federal courts have consistently applied

*Holowecki* in the Title VII context").

Leroy allegedly took against her after she complained to Lieutenant Gatto. October 2009 is 7 months before May 2010 and well outside of the statutory period. Therefore, to the extent that plaintiff asserts a Title VII claim of hostile working environment based on race, it is dismissed as untimely. Since plaintiff makes no allegations that would connect her termination with this alleged racial discrimination, the allegations relating to Sergeant Leroy's imposition of a ticket quota and threat of discipline (see p. 2, *supra* ) appear to form the sole basis for her retaliation claim.[8] As such, that claim under Title VII is also dismissed as time-barred.[9]

The only timely Title VII claim, therefore, is Alexander's claim of gender discrimination arising from her termination. Defendants argue that this allegation, as well as those giving rise to plaintiff's claims under Sections 1981 and 1983, fail to state a claim, and I thus turn next to the sufficiency of the pleadings.

## II. The Pleading Standard

In assessing a Rule 12(b)(6) motion to dismiss, the court must accept as true the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff. *Cleveland v. Caplaw Enterprises,* 448 F.3d 518, 521 (2d Cir.2006). In addition to the allegations contained within the complaint, the court considers any written instrument attached as an exhibit, as well as any documents which are incorporated into the complaint by reference, or upon which the complaint relies so heavily that it is rendered inte-

gral to the pleading. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002). An EEOC charge expressly referred to in the complaint is incorporated by reference, and the court may consider the allegations contained therein without converting the motion to one for summary judgment. *James v. Federal Reserve Bank of New York,* 2005 WL 1889859, at *1, n. 2 (E.D.N.Y., Aug. 8, 2005). Here, plaintiff has attached to her Complaint the "Right to Sue" letter issued by the Employment Litigation Section of the Department of Justice, which makes express reference to the EEOC charge, and I, accordingly, consider both.

In deciding a motion to dismiss, the court must first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the presumption of truth," and next, identify the "well-pleaded factual allegations" and "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Unless the factual allegations, when credited, make the plaintiff's claims "plausible," the complaint will be dismissed. *See id.* What is required is not "heightened fact pleadings of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the miscon-

---

**8.** Although plaintiff does not specify the dates on which these activities occurred, the allegations are set forth in such a way as to imply that they occurred immediately after Sergeant Leroy made his comment and, like the allegations relating to disparate treatment and sexual harassment, the retaliation allegations do not give rise to the reasonable inference that

the conduct took place within the statutory period. (*See* Compl. ¶¶ 15–16.)

**9.** Defendants also argue that the retaliation claim should be dismissed because plaintiff failed to exhaust her administrative remedies. In light of my conclusion that Alexander's race-based Title VII claims are time-barred, I do not address this question.

duct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (*quoting* and *citing Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955).

Prior to its decisions in *Iqbal* and *Twombly*, the Supreme Court held in *Swierkiewicz v. Sorema* "that an employment discrimination plaintiff need not plead a prima facie case of discrimination" in order to survive a motion to dismiss. *Swierkiewicz*, 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). While in *Twombly* the Supreme Court expressly stated that it was not repudiating *Swierkiewicz* insofar as it was not requiring "heightened fact pleading of specifics," 550 U.S. at 569–70, 127 S.Ct. 1955, in *Iqbal* the Court stated that *Twombly* "expounded upon the pleading standard for all civil actions, and it applies to antitrust and discrimination suits alike," 556 U.S. at 684, 129 S.Ct. 1937. "Accordingly, while a complaint need not contain specific facts establishing a prima facie case of employment discrimination to overcome a Rule 12(b)(6) motion, the claim must be facially plausible, and must give fair notice to the defendants of the basis for the claim." *Fowler v. Scores Holding Co., Inc.*, 677 F.Supp.2d 673, 679 (S.D.N.Y.2009); *accord Morris v. David Lerner Associates*, 680 F.Supp.2d 430, 440 (E.D.N.Y.2010).

## III. Sufficiency of the Title VII Disparate Treatment Claim

 There is no dispute that plaintiff, as a female, is a member of a protected class. Although her Complaint does not include allegations that her job performance had been satisfactory, the EEOC charge contains the statement that, in their previous precincts, both she and the only other female assigned to the Conditions Squad had been approved to work paid details and "had already met the [relevant] guidelines." (Gomez–Sanchez Decl., Ex. B at 3.) The adverse employment plaintiff alleges to have suffered is the denial of her applications to work paid details and her termination after being disciplined for an off-duty incident. (*See* Compl. ¶¶ 17, 19.) She alleges that her similarly situated male colleagues were permitted to work the desirable paid details, and that other colleagues, also similarly situated and also male, were not terminated, although they had engaged in much more egregious off-duty conduct. (*Id.*) These allegations give rise to an inference of discrimination and are sufficient to state a plausible claim of disparate treatment under Title VII. *See Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir.2003) ("[A] showing that the employer treated plaintiff less favorably than a similarly situated employee outside of [plaintiff's] protected group—is a recognized method of raising an inference of discrimination"). Defendant's motion to dismiss this claim is denied.[10]

---

**10.** Defendants try to defeat this inference by submitting a copy of a complaint filed in the U.S. District Court for the Southern District of New York, in which a male probationary police officer alleges that the modification of his probationary period and his eventual termination were the result of discrimination on the basis of his race and national origin. (*See* Memo of Law in Supp., Appx. A, *Bohorquez v. City of New York*.) The (male) plaintiff in that action alleges that his termination followed a "minor" off-duty incident, and defendants contend that this refutes Alexander's assertion that similarly situated male probationary officers did not have their employment terminated as a result of off-duty conduct. This argument is unavailing, however, since Alexander's Complaint makes reference to three other male probationary officers who were not terminated in connection with off-duty conduct.

## IV. Sufficiency of the Section 1981 and 1983 Claims

The same allegations that form the basis of plaintiff's claims under Title VII also form the basis of her claims under 42 U.S.C. §§ 1981 and 1983. While the Title VII claims were asserted against the City, however, the claims under these Sections are asserted only against the individual defendants acting in their individual capacity.[11] Like the alleged Title VII violations, the alleged violations of §§ 1981 and 1983 are based on racial discrimination stemming from a hostile work environment, gender-based discrimination stemming both from sexual harassment/hostile work environment and disparate treatment, and retaliation.

### A. Claims of Discrimination on the Basis of Gender

#### 1. The § 1981 Claim

■ I note, first, that § 1981 does not provide a claim for gender-based employment discrimination. *Runyon v. McCrary*, 427 U.S. 160, 167, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) ("42 U.S.C. § 1981 is in no way addressed to" gender or religion as "categories of selectivity"); *see also Yaba v. Cadwalader, Wickersham & Taft*, 931 F.Supp. 271, 274–75 (S.D.N.Y.1996) ("Section 1981 protects against racial or ethnic discrimination, nothing else"). Any such claim purportedly asserted under this Section is therefore dismissed.

#### 2. The § 1983 Claims

Under § 1983, a plaintiff may bring a "civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993). "To establish a constitutional violation un-

der § 1983, a plaintiff must show that (1) the defendant acted under color of state law; and (2) the defendant's actions resulted in a deprivation of the plaintiff's constitutional rights." *Williams v. New York City Housing Authority*, 335 Fed.Appx. 108, 110 (2d Cir.2009) (summary order); *accord Washington v. County of Rockland*, 373 F.3d 310, 315 (2d Cir.2004). Moreover, "[i]n this Circuit personal involvement of defendants in alleged constitutional violations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977); *accord Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107, 122 (2d Cir.2004).

#### a. Disparate Treatment

■ Here, there is no dispute that the individual defendants—officers of the NYPD—acted under color of state law. Although plaintiff's allegations as to the constitutional violation are not specific, discrimination on the basis of gender, including that resulting from sexual harassment and disparate treatment, may be actionable under § 1983 as a violation of equal protection. *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir.1996). However, as set forth above, Alexander's disparate treatment claim is based on the denial of her applications to work paid details and her eventual termination, and she does not allege that the denials or the termination were the result of actions or decisions taken by either Lieutenant Gatto or Sergeant Leroy. (*See* Compl. ¶¶ 17, 19.) Since plaintiff has not alleged that the individual defendants were personally involved in the deprivation of her equal protection rights and no reading of the Complaint gives rise to that inference, the claims against the individual defendants

---

**11.** *See supra, pp. 242–43.*

relating to disparate gender treatment under § 1983 are dismissed.

### b. Sexual Harassment/Hostile Work Environment

Similarly, there is no allegation that Sergeant Leroy was personally involved with the alleged sexual harassment, and this claim is dismissed as to him. I therefore turn to the sufficiency of the claim as to Lieutenant Gatto (whose personal involvement is indeed alleged).

"Once action under color of state law is established, the analysis for [§ 1983] claims is similar to that used for employment claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals." *Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir.2006). The elements of a § 1983 equal protection claim "are generally the same as the elements of" a Title VII claim, "and the two must stand or fall together." *Feingold v. New York,* 366 F.3d 138, 159 (2d Cir.2004). Thus, in a Title VII or § 1983 context, "for sexual harassment to be actionable, it must be sufficiently severe or pervasive—both subjectively and objectively—to alter the conditions of [the victim's] employment and create an abusive working environment. And, of course, the plaintiff must establish that the hostile or abusive treatment was because of his or her sex." *Redd v. New York State Division of Parole,* 678 F.3d 166, 175 (2d Cir.2012) (internal citations and quotation marks omitted) (alteration in original); *see also Beale v. Mount Vernon Police Department,* 895 F.Supp.2d 576, 585 (S.D.N.Y.2012) (stating standard and acknowledging its applicability to claims under both Title VII and § 1983). The types of conduct that may give rise to a sexual harassment claim "include unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

Plaintiff alleges that Lieutenant Gatto "monitored" her through text messages, and that he did not so "monitor" the other members of the Conditions Squad; that he made inappropriate comments about her civilian clothing and sent her a picture of his home in Florida and invited her to visit him; and that he sent text messages and e-mails to plaintiff on her days off and during working hours on January 1, 2010, when he invited plaintiff to join him in his unmarked vehicle and bring something to drink. (Compl. ¶ 18.)

To determine whether the environment is objectively hostile, the court evaluates such circumstances as the severity and frequency of the conduct, "whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Redd,* 678 F.3d at 175. The question of subjective hostility may be illuminated by examining the psychological well-being of the plaintiff, although this is not the only factor. *See id.* (*quoting Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

■ In this case, plaintiff has not alleged sufficient facts to support a conclusion of objective or subjective hostility. According to the allegations, Lieutenant Gatto directed an unusual level of attention at plaintiff during the night of January 1, 2010—attention which was not directed at the other members of the squad, and which she does not allege was directed at her because of her gender. The activity that is alleged to have occurred at other times—and the Complaint does not provide details as to the frequency of this other activity—is not alleged to have been physically threatening or humiliating, or even offensive. While it may have been

annoying, plaintiff makes no allegations which would provide an indication as to the effect of Lieutenant Gatto's behavior upon her, her psychological well-being, or upon her ability to carry out the responsibilities of her employment. Plaintiff's § 1983 sexual harassment claim is therefore dismissed.

## B. Claims of Discrimination on the Basis of Race

### 1. Retaliation

#### a. The retaliation claim under § 1983

■ In connection with her claims under both §§ 1981 and 1983, Alexander alleges that the individual defendants deprived her of certain constitutional rights "and retaliated against [her] for engaging in protected activity." (Compl. ¶¶ 26, 30.) While plaintiff alleges that the defendants interfered with her ability "to enjoy freedom of speech," there is no support for a free speech claim to be found elsewhere in the Complaint and the truth of this allegation is not presumed. *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. Thus, the only constitutional violation alleged in support of plaintiff's retaliation claim relates to the equal protection clause. However, the "equal protection clause does not protect against retaliation due to complaints of racial discrimination." *See Bernheim v. Litt,* 79 F.3d 318, 323 (2d Cir.1996) ("we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination"); *cf. Ratliff v. DeKalb Couty, Ga.,* 62 F.3d 338, 341 (11th Cir.1995) ("no established right exists under the equal protection clause to be free from retaliation"). Plaintiff's allegation that she was retaliated against for complaining to Lieutenant Gatto forms the sole basis for

her retaliation claim under § 1983, and that claim is, accordingly, dismissed.

#### b. The retaliation claim under § 1981

■ To establish a plausible claim of retaliation under § 1981, the plaintiff must allege that she was engaged in a protected activity known to defendant, that she suffered an adverse employment decision, and that there was a causal connection between the protected activity and the adverse employment decision. *See, e.g., Fincher v. Depository Trust and Clearing Corp.,* 604 F.3d 712, 720 (2d Cir.2010). Under a recent decision of the Supreme Court, a plaintiff making out the causal connection must show that "the desire to retaliate was the but-for cause of the challenged employment action," and not just a motivating factor. *University of Texas Southwestern Medical Center v. Nassar,* — U.S. —, 133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013). For the purposes of a federal retaliation claim, an adverse employment decision is one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Railway Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); *see also Fincher,* 604 F.3d at 721 (applying *Burlington* to retaliation claims under § 1981). Here, notwithstanding Sergeant Leroy's alleged statement that he was retaliating against Alexander, there is no allegation that she suffered an adverse employment action as a result of her complaint about the racist comment to Lieutenant Gatto.[12] An order to make an arrest, the imposition of a "ticket quota," and even the threat of discipline do not amount to materially adverse employment actions. *See Burlington,* 548 U.S. at 68, 126 S.Ct. 2405 ("We speak of material adversity be-

---

**12.** Given this conclusion, the question of whether or not plaintiff's complaint about

Sergeant Leroy's comment constitutes a protected activity need not be addressed.

cause we believe it is important to separate significant from trivial harms"). Neither, in this case, does Lieutenant Gatto's failure to investigate or take further action after plaintiff made her complaint. *Fincher*, 604 F.3d at 721. Plaintiff's claim for retaliation under § 1981 is therefore dismissed.[13]

## 2. Racially Hostile Work Environment

Although there are differences relating to timeliness, policy or custom, assertion against individuals, and discriminatory intent, "most of the standards applicable to the conduct alleged to constitute hostile work environment in violation of Title VII are also applicable to [plaintiff's] employment claims under § 1981 and [her] equal protection claims under § 1983." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225–30 (2d Cir.2004). Since plaintiff's hostile work environment claims under both §§ 1981 and 1983 are asserted only against the individual defendants acting in their individual capacities, they are subject to the same substantive analysis.

To allege the existence of a hostile work environment, "a plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule and insult that the terms of her employment were thereby altered." *Fincher*, 604 F.3d at 723–24. "For racist comments, slurs and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.

1997) (internal citation omitted). "Isolated instances of harassment ordinarily do not rise to this level," unless the plaintiff can show that a single incident was "extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000) (internal quotation marks and citations omitted) (superseded by regulation on non-relevant grounds, as stated in *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 108–09 (2d Cir.2013)).

■■■ As set forth above, the only instance of alleged racially motivated discrimination or hostility is Sergeant Leroy's "slave for a day" comment, which does not rise to the level of "extraordinary" severity needed to support a claim of racial discrimination resulting from a hostile work environment. In the absence of any other allegations of race-based discrimination, the Complaint, as pleaded, does not establish a claim for race-based discrimination under §§ 1981 and 1983.

## V. The NYSHRL and NYCHRL Claims

The sole basis asserted by defendants for the dismissal of the claims arising under the State and City Human Rights Laws is that the court should decline to exercise supplemental jurisdiction. In light of my conclusion that the gender-related disparate treatment claim under Title VII, based on termination, should not be dismissed, and since this claim is so related to the City and State Human Rights Law claims as to form a part of the

---

**13.** To the extent that plaintiff tries, in her opposition papers, to assert that the adverse employment action she suffered was the extension of her probationary period and termination (*see* Mem. in Opp., at 16), I note that there is nothing in the Complaint to connect her termination (causally or otherwise) with the alleged race-based discrimination. Rath-

er, she alleges that her probationary period had been extended in August of 2009, two months *before* Sergeant Leroy made his comment. Moreover, the alleged discriminatory basis for her termination, as set forth in the Complaint, was not race, but gender. (*See* Compl. ¶ 19.)

same case or controversy, it is appropriate to let the Human Rights Law claims arising out of these allegations proceed to a motion for summary judgment as well. *See* 28 U.S.C. § 1367(a). Moreover, although I recognize that some or all of the other bases for the Human Rights Law claims may be subject to dismissal on the basis of the same analysis set forth here, defendants have not requested dismissal on this basis and this issue has not been briefed. Accordingly, defendants' motion to dismiss the City and State Human Rights Law claims is denied.

## VI. Plaintiff's Request to Amend the Complaint

Although she makes no formal application to do so, plaintiff seeks leave, in her opposition papers, to amend her complaint. Defendants oppose this request on the ground that plaintiff cannot show good cause to do so. Pursuant to Magistrate Judge Go's scheduling order of March 2, 2012, any motions to amend were to be filed no later than May 15, 2012.[14] Plaintiff made no application for leave to amend on or before that date, and she offers no reason, now, for the delay. Furthermore, plaintiff does not offer a proposed amendment, and she provides no basis upon which to conclude that any amendments would not be futile.[15] Therefore, her request for leave to amend must be denied. *See, e.g., Parker v. Columbia Pictures Industries,* 204 F.3d 326, 339–40 (2d Cir. 2000) (request to amend may be denied where the amendments would fail to state a cause of action, and a district court does not abuse its discretion by denying leave

to amend after a court-imposed deadline where the movant has failed to show good cause for the delay).

## CONCLUSION

As set forth above, defendants' motion to dismiss is denied with respect to the Title VII gender discrimination/disparate treatment claim relating to termination, and to the City and State Human Rights Law claims, and it is granted in all other respects. Since the remaining claims are asserted against the City only, the Complaint is dismissed in its entirety against Lieutenant Gatto and Sergeant Leroy.

Defendants have submitted a request for a premotion conference to discuss their intended motion for summary judgment. In light of this Decision, however, such conference is not necessary. Instead, the parties shall serve their motion papers in accordance with the following schedule:

The City shall serve its moving papers on or before August 30, 2013;

Alexander shall serve her opposition papers on or before October 4, 2013;

The City shall serve its reply papers on or before October 25, 2013 and file all of the motion papers on that date, in accordance with my Individual Motion Practices.

SO ORDERED.

---

14. *See* ECF Docket entry for March 2, 2012.

15. The only additional allegation she offers is that she complained about the alleged sexual harassment to the Integrity Control Officer, Virginia Lee, in February or March 2010. (*See* Mem. in Opp., at 15.) However, plaintiff's probationary period had already been

extended by that time, and, as is set forth in greater detail, *supra,* insofar as there is no indication that Lieutenant Gatto or Sergeant Leroy had anything to do with plaintiff's termination, the addition of this allegation does not support the conclusion—or even the inference—that her termination was retaliatory.